JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Campbell, Kofi; Brooks, Billy; Brooks, Howard; Smiley, Charlie III; Diggins, Eric; Atkins, Michael; Jackson, Caleb; Kelly, Christopher; and Collective Action Plaintiffs John Does 1-10 | C.R. England, Inc. d/b/a England Carrier Services, ECS, and Premier Truck Driving School, and John Does 1-10, |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Salt Lake
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Harward & Associates, 9350 S. 150 E., Ste. 740, Sandy, UT 84070, 801-506-3800; Swartz Swidler, Society Hill Office Park, Ste. 10, 1878 Marlton Pike East, Cherry Hill, NJ  08003, 856-685-7240

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☒ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
FLSA Section 16(b)
Brief description of cause:
violation of FLSA

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
04/11/2013

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

James E. Harward (#4702)                          **FILED ELECTRONICALLY**
W. Earl Webster (#12274)
HARWARD & ASSOCIATES
9350 South 150 East, Suite 740
Sandy, Utah 84070
Phone: (801) 506-3800
Fax: (801) 795-7440
james.harward@harwardlaw.com
*Local Counsel for Plaintiffs*

Justin L. Swidler (Bar #: NJ 039312007/PA 205954)
Richard S. Swartz (Bar #: NJ 026801997/PA 80850)
SWARTZ SWIDLER
1878 Marlton Pike East, Suite 10
Cherry Hill, NJ  08003
Phone: (856) 685-7420
*Pro Hac Vice Counsel for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **KOFI CAMPBELL, BILLY BROOKS, HOWARD BROOKS, CHARLIE SMILEY III, ERIC DIGGINS, MICHAEL ATKINS, CALEB JACKSON, CHRISTOPHER KELLY, and COLLECTIVE ACTION PLAINTIFFS JOHN DOES 1-10,** | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| **Plaintiffs,** | **JURY DEMANDED** |
| **vs.** | |
| **C.R. ENGLAND, INC. d/b/a ENGLAND CARRIER SERVICES, ECS, and PREMIER TRUCK DRIVING SCHOOL, and JOHN DOES 1-10,** | **Case No: _____** |
| **Defendants.** | **Judge: _____** |

---

## COLLECTIVE ACTION COMPLAINT

1.      Plaintiffs Kofi Campbell, Billy Brooks, Howard Brooks, Charlie Smiley III, Eric

Diggins, Michael Atkins, Caleb Jackson, and Christopher Kelly ("Named Plaintiffs"), on behalf of themselves and those similarly situated ("Collective Action Plaintiffs"), by and through undersigned counsel, hereby complain as follows against Defendant C.R. England, Inc., d/b/a England Carrier Services, ECS, and Premier Truck Driving School, and John Does 1-10 (collectively, "Defendants").

## INTRODUCTION

2.      Named Plaintiffs initiate the instant action to redress violations by Defendants of the Fair Labor Standards Act ("FLSA") and the common-law rights of Named Plaintiffs and the putative class.  Defendants intentionally failed to compensate Named Plaintiffs and Collective Action Plaintiffs for wages earned while in the employ of Defendants.  As a result of Defendants' unlawful actions, Named Plaintiffs and Collective Action Plaintiffs have been harmed.

## JURISDICTION AND VENUE

3.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Named Plaintiffs' and Collective Action Plaintiffs' federal claims because this civil action arises under a law of the United States and seeks redress for violations of a federal law, 29 U.S.C. § 201 *et seq*. This Court has supplemental jurisdiction over related state law claims because such claims arise out of the same circumstance and are based upon a common nucleus of operative fact.

4.      This Court has original subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 because at least one Plaintiff and/or at least one putative class member is a citizen of a state other than the state which Defendant England is a citizen of, the class consists of more than 100 class members, and the amount in controversy in the instant action exceeds five

million dollars.

5.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

6.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this judicial district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendants are deemed to reside where it is subject to personal jurisdiction, rendering Defendants residents of this judicial district.

## **PARTIES**

7.      The foregoing paragraphs are incorporated herein as if set forth in full.

8.      Named Plaintiffs are adult individuals residing at the following addresses: KOFI CAMPBELL, 719 Grand Street, Apt. 2, Jersey City, NJ 07304; BILLY BROOKS, 3603 Terry Road, Apt. C5, Jackson, MS 39212; HOWARD BROOKS, 4816 Gibson Road, Vicksburg, MS 39180; CHARLIE SMILEY III, 28 W Faribault St., Duluth, MN 55803; ERIC DIGGINS, 611 E 8th Street, Chaplin, LA 70548; MICHAEL ATKINS, 108 Cowzen Court, Lancaster, KY 40444; CALEB JACKSON, 1615 North 13th Street, Poplar Bluff, MO 63901; CHRISTOPHER KELLY, 5815 Warriors Trail, Vicksburg, MS 39180.

9.      Defendant C.R. England, Inc. d/b/a England Carrier Services, ECS, and Premier Driving School (hereinafter "Defendant England") is a Utah Corporation, whose business address is 4701 West 2100 South, Salt Lake City, Utah, is engaged in the hauling and delivery of freight

across the United States.

10.     Defendants John Doe 1 through John Doe 5 are presently unknown persons who, directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices of Defendants which resulted in Defendants' failing to pay Named Plaintiff and Collective Action Plaintiffs proper compensation pursuant to the FLSA.

11.     Defendants John Doe 6 through John Doe 10 are presently unknown persons who had control over processing payroll regarding Named Plaintiff and Collective Action Plaintiffs.

12.     At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant England.

## COLLECTIVE ACTION ALLEGATIONS

13.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

14.     Named Plaintiffs bring this action for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of Collective Action Plaintiffs.

15.     Specifically, Named Plaintiffs seek to represent a nationwide class of all persons who worked or work for Defendant England as over-the-road truck drivers and who were/are subject to Defendant England's unlawful pay practices and policies at any point from three years prior to the filing of the instant matter to the present (members of this putative class are referred to as "Collective Action Plaintiffs").

16.     Named Plaintiffs' claims are typical of the claims of Collective Action Plaintiffs,

because Named Plaintiffs, like all Collective Action Plaintiffs, were employees of Defendant England whom Defendant England failed to pay minimum wage as required by the FLSA in the last three years.

17.     Named Plaintiffs will fairly and adequately protect the interests of Collective Action Plaintiffs, because Named Plaintiffs' interests are coincident with, and not antagonistic to, those of the class.  Named Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

18.     No difficulties are likely to be encountered in the management of this collective action that would preclude its maintenance as a collective action.  The class will be easily identifiable from Defendant England's records.

19.     Similarly situated employees are known to Defendant England, are readily identifiable by Defendant England, and can be located through Defendant England's records. Named Plaintiffs do not know the exact size of the potential class, as such information is in the exclusive control of Defendant England; however, on information and belief, the number of potential class members is estimated to be in the thousands.

20.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class.   Among the questions of law and fact that are common to the class is whether Defendant England failed to pay the putative class the minimum wage for all hours worked, by (1) Defendant England failing to compensate newly hired drivers for time spent during the initial orientation; (2) Defendant England failing to compensate newly hired drivers at least the federal minimum hourly wage for travel time

spent traveling during normal business hours; (3) Defendant England failing to compensate newly hired drivers at least the federal minimum wage for all compensable time worked during "Phase 1" of the training program; (4) Defendant England failing to compensate newly hired drivers for time spent in training and testing following "Phase 1" but prior to "Phase 2" of the training program; (5) Defendant England failing to compensate newly hired drivers at least the federal minimum wage for all compensable time worked during "Phase 2" of the training program; (6) Defendant England failing to compensate its drivers at least the federal minimum wage for all compensable hours worked when on assignment for more than 24 hours; and (7) Defendant England unlawfully deducting expenses which were incurred for the benefit of Defendant England from the wages of its drivers.

21.    Collective Action Plaintiffs should be broken into 6 subclasses consisting of the following.  Most class members will be members of multiple subclasses and many will be members of all subclasses:

a.    <u>Initial Orientation Plaintiffs</u>: Members of this subclass are similarly situated because all Initial Orientation Plaintiffs were subject to the violations detailed under Cause of Action 1 of this Complaint within the last three years, in violation of the FLSA.  All Named Plaintiffs will act as representatives of this subclass.

b.    <u>Phase I Training Plaintiffs</u>:  Members of this subclass are similarly situated because all Phase I Training Plaintiffs were subject to the violations detailed under Cause of Action 2 of this Complaint within the last three years, in violation of the FLSA.  All Named Plaintiffs will act as representatives of this subclass.

        c.     <u>Phase II Training Plaintiffs</u>: Members of this subclass are similarly situated because all Phase II Training Plaintiffs were subject to the violations detailed under Causes of Action 3 and 4 of this Complaint within the last three years, in violation of the FLSA.  Named Plaintiffs Campbell, Howard Brooks, Diggins, and Atkins (collectively "Named Phase II Training Plaintiffs") will act as representatives of this subclass.

        d.     <u>Post-Training Plaintiffs</u>: Members of this subclass are similarly situated because all Post-Training Plaintiffs were subject to the violations detailed under Cause of Action 5 of this Complaint within the last three years, in violation of the FLSA.  Named Plaintiffs Diggins and Jackson (collectively "Named Post-Training Plaintiffs") will act as representatives of this subclass.

        e.     <u>Travel-Time Plaintiffs</u>: Members of this subclass are similarly situated because all Post-Training Plaintiffs were subject to the violations detailed under Cause of Action 6 of this Complaint within the last three years, in violation of the FLSA.  All Named Plaintiffs will act as representatives of this subclass.

        f.     <u>Unlawful Deduction Plaintiffs</u>: Members of this subclass are similarly situated because all Unlawful Deduction Plaintiffs were subject to the violations detailed under Cause of Action 7 of this Complaint within the last three years, in violation of the FLSA.  Named Plaintiffs Billy Brooks, Howard Brooks, Atkins, Jackson, Kelly, and Diggins (collectively "Named Unlawful Deduction Plaintiffs") will act as representatives of this subclass.

    22.     Therefore, Named Plaintiffs should be permitted to bring this action as a collective action for and on behalf of themselves and those employees similarly situated,

pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

23.     The foregoing paragraphs are incorporated herein as if set forth in full.

24.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Class Action Fairness Act of 2005, Unlawful Deduction Plaintiffs bring their claim for relief on behalf of themselves and those similarly situated ("Class Plaintiffs").

25.     Specifically, Unlawful Deduction Plaintiffs seek to represent a class of all persons who worked or work for Defendant England in the past two years and who were required to pay for costs which were incurred primarily for Defendant England's benefit.

26.     The class is so numerous that the joinder of all class members is impracticable. Named Unlawful Deduction Plaintiffs do not know the exact size of the class, as such information is in the exclusive control of Defendants; however, on information and belief, the number of potential class members is estimated to be in the thousands.

27.     Named Unlawful Deduction Plaintiffs claims are typical of the claims of the putative class members, because Named Unlawful Deduction Plaintiffs, like all Class Plaintiffs, were employees of Defendant England in Utah who harmed as a result of Defendant England being unjustly enriched by withholding wages from its employees for costs which were incurred for Defendant England's benefit.

28.     Named Unlawful Deduction Plaintiffs will fairly and adequately protect the interests of the putative class because Named Unlawful Deduction Plaintiffs' interests are coincident with, and not antagonistic to, those of the class.  Named Unlawful Deduction Plaintiffs have retained

counsel with substantial experience in the prosecution of claims involving employee wage disputes.

29.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action.  The class will be easily identifiable from Defendants' records.

30.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Such treatment will allow all similarly situated individuals to prosecute their common claims in a single forum simultaneously.  Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendant England.  Furthermore, the amount at stake for individual putative class members may not be great enough to enable all of the individual putative class members to maintain separate actions against Defendant England.

31.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class.  Among the questions of law and fact that are common to the class is whether Defendant England was unjustly enriched because of its company-wide policy to reduce wages for costs which primarily benefited Defendant England.

32.     Therefore, Named Unlawful Deduction Plaintiffs should be permitted to bring their claims as a class action pursuant to FRCP 23(b)(2) and Rule 23(b)(3).

## **FACTUAL BACKGROUND**

33.     The foregoing paragraphs are incorporated herein as if set forth in full.

34.     Upon information and belief, Defendant England has maintained the unlawful pay

system described herein for at least the last three years.

35.     Named Plaintiffs and Collective Action Plaintiffs were subjected to an unlawful compensation system to which Defendants subjected all of their over-the-road drivers as described *infra*.

36.     Named Plaintiffs and Collective Action Plaintiffs were all over-the-road commercial truck drivers employed by Defendant England and were all subjected to the policies discussed herein within the last three years.

37.     Named Plaintiffs were all hired by Defendant England in 2012 or 2013 and were subjected to the violations asserted herein within the last two years.

**CAUSE OF ACTION NO. 1**
**<u>FAILURE TO PAY FOR INITIAL ORIENTATION</u>**

38.     The foregoing paragraphs are incorporated herein as if set forth in full.

39.     Defendant England required its newly hired drivers to attend a multi-day orientation program.

40.     During this initial orientation program, Defendant England required Named Plaintiffs and Initial Orientation Plaintiffs to attend classes regarding the rules and procedures of Defendant England.  The classes lasted approximately 9-10 hours per day.

41.     In addition to attending the orientation classes, Defendant England required Named Plaintiffs and Initial Orientation Plaintiffs to meet with Defendant England's employees and agents about the rules, practices, and procedures of Defendant England and to complete paperwork outside of class.

42.     Defendant England required Named Plaintiffs and Initial Orientation Plaintiffs to pay for the orientation by requiring a fee to be paid to "process" them into the program.

43.     Defendant England informed Named Plaintiffs and Initial Orientation Plaintiffs that upon successful completion of the orientation program, they were guaranteed a job at Defendant England.

44.     Defendant England paid for the travel costs associated with bringing Named Plaintiffs and Initial Orientation Plaintiffs – who reside in areas across the United States – to the location of the orientation program.

45.     Defendant England paid for the lodging costs associated with housing Named Plaintiffs and Initial Orientation Plaintiffs near the orientation program.

46.     Upon successful completion of the multi-day orientation program, Defendant England informed Named Plaintiffs and Initial Orientation Plaintiffs that they were "hired" and would begin "Phase I" of Defendant England's training program.

47.     Consistent with Defendant England's policies, upon his initial hiring by Defendant England, Named Plaintiff Campbell was required to attend a 10-day orientation program in Cedar Hill, Texas.  During this orientation program, Named Plaintiff Campbell attended orientation class for 10 days which lasted 9-10 hours per day.  Named Plaintiff Campbell was further required to engage in other compensable work during this 10-day period, including meeting with Defendant England's employees and agents about the rules, practices, and procedures of Defendant England outside of class and completing job-related paperwork.

48.     Consistent with Defendant England's policies, upon his initial hiring by Defendant

England, Named Plaintiff Billy Brooks was required to attend a 17-day orientation program in Salt Lake City, Utah.  During this orientation program, Named Plaintiff Billy Brooks attended orientation classes for 17 days which lasted 9-10 hours per day.  Named Plaintiff Billy Brooks was further required to engage in other compensable work during this 17-day period, including meeting with Defendant England's employees and agents about the rules, practices, and procedures of Defendant England outside of class and completing job-related paperwork.

49.     Consistent with Defendant England's policies, upon his initial hiring by Defendant England, Named Plaintiff Howard Brooks was required to attend a 17-day orientation program in Richmond, Indiana.  During this orientation program, Named Plaintiff Howard Brooks attended orientation class for 17 days which lasted 9-10 hours per day.  Named Plaintiff Howard Brooks was further required to engage in other compensable work during this 17-day period, including meeting with Defendant England's employees and agents about the rules, practices, and procedures of Defendant England outside of class and completing job-related paperwork.

50.     Consistent with Defendant England's policies, upon his initial hiring by Defendant England, Named Plaintiff Smiley was required to attend a 10-day orientation program in Cedar Hill, Texas.  During this orientation program, Named Plaintiff Smiley attended orientation class for 10 days which lasted 9-10 hours per day.  Named Plaintiff Smiley was further required to engage in other compensable work during this 10-day period, including meeting with Defendant England's employees and agents about the rules, practices, and procedures of Defendant England outside of class and completing job-related paperwork.

51.     Consistent with Defendant England's policies, upon his initial hiring by Defendant

England, Named Plaintiff Diggins was required to attend an orientation program which lasted approximately 28 days in Cedar Hill, Texas.  During this orientation program, Named Plaintiff Diggins attended orientation class for about 28 days which lasted 9-10 hours per day.  Named Plaintiff Diggins was further required to engage in other compensable work during this period, including meeting with Defendant England's employees and agents about the rules, practices, and procedures of Defendant England outside of class and completing job-related paperwork.

52.     Consistent with Defendant England's policies, upon his initial hiring by Defendant England, Named Plaintiff Atkins was required to attend a 17-day orientation program in Richmond, Indiana.  During this orientation program, Named Plaintiff Atkins attended orientation class for 17 days which lasted 9-10 hours per day.  Named Plaintiff Atkins was further required to engage in other compensable work during this 17-day period, including meeting with Defendant England's employees and agents about the rules, practices, and procedures of Defendant England outside of class and completing job-related paperwork.

53.     Consistent with Defendant England's policies, upon his initial hiring by Defendant England, Named Plaintiff Jackson was required to attend a 4-day orientation program in Birds Harbor, Indiana.  During this orientation program, Named Plaintiff Jackson attended orientation class for 4 days which lasted 9-10 hours per day.  Named Plaintiff Jackson was further required to engage in other compensable work during this 4-day period, including meeting with Defendant England's employees and agents about the rules, practices, and procedures of Defendant England outside of class and completing job-related paperwork.

54.     Consistent with Defendant England's policies, upon his initial hiring by Defendant

13

England, Named Plaintiff Kelly was required to attend a 17-day orientation program in Salt Lake City, Utah.  During this orientation program, Named Plaintiff Kelly attended orientation class for 17 days which lasted 9-10 hours per day.  Named Plaintiff Kelly was further required to engage in other compensable work during this 17-day period, including meeting with Defendant England's employees and agents about the rules, practices, and procedures of Defendant England outside of class and completing job-related paperwork.

55.     Defendant England failed to compensate Named Plaintiffs and Collective Action Plaintiffs for *any* of the time spent during the multi-day orientation program, including time spent traveling during normal business hours to the orientation program, time spent in the orientation classes, and time spent with Defendant England's agents and employees outside of orientation classes completing job-related paperwork and discussing the rules and procedures of Defendant England.

**CAUSE OF ACTION NO. 2**
**<u>FAILURE TO PAY MINIMUM WAGE FOR PHASE 1 OF TRAINING</u>**

56.     The foregoing paragraphs are incorporated herein as if set forth in full.

57.     During Phase 1, Defendant England required Named Plaintiffs and Phase I Training Plaintiffs to train with an over-the-road truck driver of Defendant England.

58.     Defendant England compensated Named Plaintiffs and Phase I Training Plaintiffs a daily rate for the time spent over-the-road during Phase 1.

59.     Defendant England compensated Named Plaintiffs approximately sixty-one dollars and forty-three ($61.43) cents per day for the time they spent over-the-road during Phase 1.

60.     During Phase 1, Named Plaintiffs and Phase I Training Plaintiffs reported their status to Defendant England via the Qualcomm computer in the truck.

61.     Upon information and belief, the Qualcomm messages were received by Defendant England in a single centralized location in Utah.

62.     During Phase 1, Named Plaintiffs and Phase I Training Plaintiffs were required to remain on assignment continually for more than 24 hours. (*see* 29 C.F.R. § 785.22)

63.     Per 29 C.F.R. § 785.22, the maximum amount of time an employer may dock an employee who is on assignment for more than 24 hours for sleeping and meal periods is 8 hours per day.  The remaining amount of time (16 hours per day) is work time and must be paid.

64.     Furthermore, Named Plaintiffs rarely received five hours of uninterrupted sleep, and hence, all time logged in the sleeper berth should have been paid.

65.     Moreover, during Phase 1, Named Plaintiffs and Phase I Training Plaintiffs regularly worked more than 16 hours per day because they were required to (1) drive the truck; (2) remain in the truck while the truck was actually moving so that they could assist in transporting the cargo; (3) complete modules via the Qualcomm during times the truck was not moving so that they could complete their training; (4) wait for cargo while being limited to the truck and not being permitted to leave the truck; (5) fuel up the vehicle and perform routine maintenance to same; and (6) remain inside the truck when stopped overnight to log time in the sleeper berth and to protect Defendant England's and its customer's property.

66.     Per the applicable federal minimum wage, Defendant England was required to compensate Named Plaintiffs and Phase I Training Plaintiffs at least $116 per day ($7.25 x 16

hours).

67.     Defendant England paid Named Plaintiffs and Phase I Training Plaintiffs a daily rate below $75 per day during Phase 1.

**CAUSE OF ACTION NO. 3**
**FAILURE TO PAY FOR COMPENSABLE WORK TIME**
**FOLLOWING COMPLETION OF "PHASE 1"**

68.     The foregoing paragraphs are incorporated herein as if set forth in full.

69.     Following completion of Phase I, Defendant England required Named Phase II Training Plaintiffs, Named Plaintiff Jackson, and Phase II Training Plaintiffs to take additional classes in Defendant England's terminal.[1]

70.     The classes which were required lasted approximately 2 days and lasted approximately 8 hours per day.

71.     In addition, Named Phase II Training Plaintiffs, Named Plaintiff Jackson, and Phase II Training Plaintiffs were required to pass a road evaluation.

72.     To take the road evaluation, Named Phase II Training Plaintiffs, Named Plaintiff Jackson, and Phase II Training Plaintiffs were required to wait with other newly hired drivers, and the entire process took about 5-8 hours.

73.     In addition, Named Phase II Training Plaintiffs, Named Plaintiff Jackson, and Phase II Training Plaintiffs were required to take and pass a written test consisting of approximately 160

---

[1] Named Plaintiffs Kelly and Billy Brooks remain in "Phase I" as of the filing date of the instant lawsuit, and accordingly have not yet been harmed by the unlawful policies under this section.  Named Plaintiff Smiley did not continue his employment with Defendant England following "Phase I" and accordingly has not been harmed by the unlawful policies under this section.  Named Plaintiff Jackson was not required to complete all of Phase II. Hence, these individuals are not representative of this subclass.

questions.

74.     Said test took about 2-3 hours to complete the test, and many had to take the test more than once.

75.     Defendant England failed to compensate Named Phase II Training Plaintiffs, Named Plaintiff Jackson, and Phase II Training Plaintiffs *at all* for any of the time spent working as discussed in the paragraphs under this subheading.

## CAUSE OF ACTION NO. 4
## FAILURE TO PAY MINIMUM WAGE FOR PHASE 2 OF TRAINING

76.     The foregoing paragraphs are incorporated herein as if set forth in full.

77.     During Phase 2, Defendant England required Named Phase II Training Plaintiffs and Phase II Training Plaintiffs to train with an over-the-road truck driver of Defendant England and travel 10,000 miles over-the-road.

78.     Defendants compensated Named Phase II Training Plaintiffs and Phase II Training Plaintiffs on a mileage rate basis.

79.     Named Phase II Training Plaintiffs were compensated at a rate of approximately twelve cents ($.12) per mile.

80.     During Phase 2, Named Phase II Training Plaintiffs and Phase II Training Plaintiffs reported their status to Defendant England via the Qualcomm computer in the truck.

81.     During Phase 2, Named Phase II Training Plaintiffs and Phase II Training Plaintiffs were required to remain on assignment continually for more than 24 hours. (*see* 29 C.F.R. § 785.22)

82.     Moreover, during Phase 2, Named Phase II Training Plaintiffs and Phase II Training Plaintiffs regularly worked more than 16 hours per day because they were required to (1) remain in the truck while the truck was actually moving so that they could assist in transporting the cargo; (2) drive the truck; (3) wait for cargo while being limited to the truck and not being permitted to leave the truck; (4) fuel up the vehicle and perform routine maintenance to same; and (5) remain inside the truck when stopped overnight to log time in the sleeper berth and to protect Defendant England's and its customer's property.

83.     Furthermore, Named Phase II Training Plaintiffs and Phase II Training Plaintiffs were routinely denied having at least five hours of uninterrupted sleep each working day.

84.     Per the applicable federal minimum wage, Defendant England was required to compensate Named Phase II Training Plaintiffs and Phase II Training Plaintiffs at least $116 per day ($7.25 x 16 hours).

85.     The mileage rate Defendant England provided to Named Phase II Training Plaintiffs and Phase II Training Plaintiffs resulted in payments well below $116 per day.

**CAUSE OF ACTION NO. 5**
**FAILURE TO PAY MINIMUM WAGE FOLLOWING TRAINING**

86.     The foregoing paragraphs are incorporated herein as if set forth in full.

87.     Named Post-Training Plaintiffs and Post-Training Plaintiffs were paid a mileage rate per each mile their truck traveled following the completion of their training.

88.     Following their training, Named Post-Training Plaintiffs and Post-Training Plaintiffs reported their status to Defendant England via the Qualcomm computer in the truck.

18

89.     During this time, Named Post-Training Plaintiffs and Post-Training Plaintiffs were required to remain on assignment continually for more than 24 hours. (*see* 29 C.F.R. § 785.22)

90.     Per 29 C.F.R. § 785.22, the maximum amount of time an employer may dock an employee who is on assignment for more than 24 hours for sleeping and meal periods is 8 hours per day.  The remaining amount of time (16 hours per day) is work time and must be paid.

91.     Furthermore, Named Post-Training Plaintiffs and Post-Training Plaintiffs were routinely denied having at least five hours of uninterrupted sleep each working day and accordingly should have been paid for all time logged in the sleeper berth.

92.     Per the applicable federal minimum wage, Defendant England was required to compensate Named Post-Training Plaintiffs and Post-Training Plaintiffs at least $116 per day ($7.25 x 16 hours).

93.     Nevertheless, Defendant England failed to implement a proper fail-safe compensation system to ensure that Named Post-Training Plaintiffs and Post-Training Plaintiffs were paid at least the minimum wage during workweeks where, for various reasons, they did not log enough miles to receive over the minimum wage by virtue of their mileage rate.

94.     Because of this failure of Defendant England, Defendant England regularly paid Named Post-Training Plaintiffs and Post-Training Plaintiffs below the federal minimum wage.

### CAUSE OF ACTION NO. 6
### <u>FAILURE TO PAY FOR COMPENSABLE TRAVEL TIME</u>

95.     The foregoing paragraphs are incorporated herein as if set forth in full.

96.     Named Plaintiffs and Travel-Time Plaintiffs were required to engage in significant

amounts of travel during regular business hours that kept them away from home overnight.

97.     Named Plaintiffs and Travel-Time Plaintiffs were required to travel to the initial orientation location where they stayed overnight and away from home.

98.     Named Plaintiffs and Travel-Time Plaintiffs completed this travel during regular business hours.

99.     Named Plaintiffs Campbell, Smiley, Diggins, and Atkins and most Travel-Time Plaintiffs were required to travel from the orientation location to the Phase I location where they stayed overnight and away from home.  This travel was completed during regular business hours.

100.     Named Plaintiff Howard Brooks and some Travel-Time Plaintiffs were required to travel away from home overnight from the Phase I location to the Phase II location.  This travel was completed during regular business hours.

101.     Defendant England failed to pay Named Plaintiffs and Travel-Time Plaintiffs any compensation for such travel time or in some instances, paid Named Plaintiffs and Travel-Time Plaintiffs twenty-five dollars per day.

102.     The travel required of Named Plaintiffs and Travel-Time Plaintiffs was well beyond 4 hours per day, and accordingly, even on the occasions where Defendant England paid Named Plaintiffs and Travel-Time Plaintiffs twenty-five dollars per day, this amount was under the federal minimum wage.

103.     As a result of Defendants' unlawful conduct, Named Plaintiffs and Travel-Time Plaintiffs have been harmed.

**CAUSE OF ACTION NO. 7**
**UNLAWFUL DEDUCTIONS**

104.   The foregoing paragraphs are incorporated herein as if set forth in full.

105.   Named Unlawful Deduction Plaintiffs and Unlawful Deduction Plaintiffs regularly had their wages withheld for costs incurred which primarily benefited Defendant England.

106.   Defendant England deducted from the earned wages of Named Unlawful Deduction Plaintiffs and Unlawful Deduction Plaintiffs expenses incurred for the benefit of Defendant England.

107.   By way of example only:

a.   Named Unlawful Deduction Plaintiffs and Unlawful Deduction Plaintiffs had $75 withheld from their paychecks to "repay" a loan to Defendant England incurred by Named Unlawful Deduction Plaintiffs and Unlawful Deduction Plaintiffs as a result of them having received training during the orientation period.

b.   Named Unlawful Deduction Plaintiff Jackson had his wages withheld from his paycheck issued March 29, 2013 for "Loadlocks" in the amount of $95.37 that were purchased to protect cargo for Defendant England and were purchased for Defendant England.

c.   On occasions when Named Unlawful Deduction Plaintiffs and Unlawful Deduction Plaintiffs were required to stay in a hotel or secure a hotel for a trainee, Defendant England deducted the price of the hotel from the wages of Named Unlawful Deduction Plaintiffs and Unlawful Deduction Plaintiffs.

108.   By deducting such amounts from the pay of Named Unlawful Deduction Plaintiffs

and Unlawful Deduction Plaintiffs, Defendant England paid Named Unlawful Deduction Plaintiffs and Unlawful Deduction Plaintiffs below the minimum wage.

109.    In addition, by forcing Named Unlawful Deduction Plaintiffs and Unlawful Deduction Plaintiffs to pay for costs which were incurred primarily for the benefit of Defendant England, Defendant England was unjustly enriched.

110.    Accordingly, by withholding such amounts from the wages of Named Unlawful Deduction Plaintiffs and Unlawful Deduction Plaintiffs, Defendant England violated state and federal law.

**COUNT I**
**Violations of the Fair Labor Standards Act**
**(Named Plaintiffs and Collective Action Plaintiffs v. Defendants)**
**(Minimum Wage)**

111.    The foregoing paragraphs are incorporated herein as if set forth in full.

112.    At all times relevant herein, Defendants were and continue to be an "employer" within the meaning of the FLSA.

113.    At all times relevant herein, Named Plaintiffs and Collective Action Plaintiffs were/are "employees" within the meaning of the FLSA.

114.    The FLSA requires employers, such as Defendants, to minimally compensate employees, such as Named Plaintiffs and Collective Action Plaintiffs, at the federal minimum wage rate for each hour worked.

115.    As a result of Defendants' company-wide practices and policies of paying its employees below the minimum wage for all hours worked each workweek, Named Plaintiffs and

Collective Action Plaintiffs have been harmed.

116.   John Does 1-5 are jointly and individually liable for Defendant England's failure to compensate Named Plaintiff and Collective Action Plaintiffs at least the federal minimum wage for all hours worked because they directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the FLSA.

117.   John Does 6-10 are jointly and individually liable for Defendant England's failure to compensate Named Plaintiff and Collective Action Plaintiffs at least the federal minimum wage for all hours worked because they had control over processing payroll for Named Plaintiff and Collective Action Plaintiffs.

118.   Defendants willfully failed to compensate Named Plaintiffs and Collective Action Plaintiffs the federal minimum wage.

119.   As a result of Defendants' failure to compensate Named Plaintiffs and Collective Action Plaintiffs at the federal minimum wage rate, Defendants have violated and continue to violate the FLSA.

### COUNT II
### Unjust Enrichment
### (Named Unlawful Deduction Plaintiffs and Unlawful Deduction Plaintiffs v. Defendant England)

120.   The foregoing paragraphs are incorporated herein as if set forth in full.

121.   All drivers employed by Defendant England are deemed employees of Utah because all drivers (1) had their employment application processed in Utah; (2) reported to a manager located in Utah; (3) reported their hours worked via Defendants' Qualcomm to Defendants'

headquarters in Utah; (4) had their pay calculated by Defendants' headquarters in Utah; and (5) received their pay directly from Utah. Moreover, all decisions regarding the drivers' employment, including hiring, driving assignments, and termination, were made in Utah.

122.    Defendant England withheld wages earned by Named Unlawful Deduction Plaintiffs and Unlawful Deduction Plaintiffs for the costs which primarily benefited Defendant England.

123.    Such costs primarily benefited Defendant England and did not benefit Named Unlawful Deduction Plaintiffs and Unlawful Deduction Plaintiffs.

124.    By forcing Named Unlawful Deduction Plaintiffs and Unlawful Deduction Plaintiffs to pay for costs which were incurred primarily for the benefit of Defendant England, Defendant England was unjustly enriched.

125.    As a result of Defendant England's conduct, Named Unlawful Deduction Plaintiffs and Unlawful Deduction Plaintiffs have been harmed.

**WHEREFORE**, Named Plaintiffs and Collective Action Plaintiffs pray that this Court enter an Order:

1) Certifying the instant action as a "collective action" pursuant to the Fair Labor Standards Act;

2) Certifying the instant matter as a "class action" pursuant to Federal Rule of Civil Procedure 23;

3) Enjoining Defendant England from continuing to maintain its illegal policy, practice, or customs in violation of federal and state law;

4) Providing that Defendant England is to compensate, reimburse, and make Named Plaintiffs and Collective Action Plaintiffs whole for any and all pay and benefits they would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings.

5) Awarding Named Plaintiffs and Collective Action Plaintiffs liquidated damages pursuant to the laws they are suing under in an amount equal to the actual damages in this case;

6) Awarding Named Plaintiffs and Collective Action Plaintiffs the costs and expenses of this action and reasonable legal fees as provided by applicable law; and,

7) Awarding Named Plaintiffs and Collective Action Plaintiffs all other relief as the Court deems appropriate and just.

DATED: April 11, 2013

Respectfully Submitted,

**HARWARD & ASSOCIATES, PLLC**

/s/ James Harward
James E. Harward, Esq.
Local counsel for Plaintiffs


**SWARTZ SWIDLER, LLC**

/s/ Justin  L. Swidler
Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
Pro Hac Vice Counsel for Plaintiffs

25