# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **KOFI CAMPBELL**, *et al.* <br><br> **Plaintiffs,** <br> v. <br><br> **C.R. ENGLAND, INC. d/b/a ENGLAND CARRIER SERVICES,** *et al.* <br><br> **Defendants.** | **JOINT MOTION FOR PRELIMINARY APPROVAL OF FLSA SETTLEMENT AND RELATED RELIEF** <br><br> **DOCKET NO: 13-262** |

Plaintiffs and Defendants, by and through undersigned counsel, hereby seek an Order:

1. Granting preliminary approval to the proposed FLSA Collective Action Settlement, a copy of which is attached to hereto;

2. Granting Final Certification to the FLSA Collective Action for Purposes of Settlement Only;

3. Ordering the proposed notice be distributed to all FLSA opt-in Plaintiffs within 15 days of the Court's order, a copy of which is attached hereto;

4. Ordering that any opt-in Plaintiff who wishes to object to the settlement must file their objection within 45 days of the mailing of the notice; and

5. Ordering a Fairness Hearing approximately 60 days following the Court's order granting preliminary approval of the settlement.

                                                                 Respectfully submitted,

                                                                 */s Justin L. Swidler*
                                                                  Justin L. Swidler, Esq.
                                                                 Richard S. Swartz, Esq.
                                                                 **SWARTZ SWIDLER, LLC**
                                                                 1101 Kings Hwy. N., Ste. 402
                                                                 Cherry Hill, NJ 08003
                                                                Phone: (856) 685-7420
                                                                Fax: (856) 685-7417


                                                                /s/ *Scott A. Hagen*
                                                                Scott A. Hagen
                                                                Michael E. Blue
                                                                Liesel B. Stevens
                                                                RAY QUINNEY & NEBEKER P.C.
                                                                36 South State Street, Suite 1400
                                                                Post Office Box 45385
                                                                Salt Lake City, Utah 84145-0385
                                                                Phone: (801) 532-1500
                                                                Facsimile: (801) 532-7543

June 26, 2015

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KOFI CAMPBELL, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>C.R. ENGLAND, INC., *et al.*<br><br>  Defendants. | Case No.: 13-262 |

## BRIEF IN SUPPORT OF THE PARTIES' JOINT MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE ACTION SETTLEMENT

Scott A. Hagen (4840)
Michael E. Blue (5258)
Liesel B. Stevens (10431)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
 Telephone: (801) 532-1500

Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Hwy. N., Ste. 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420

## TABLE OF CONTENTS

I. Introduction ................................................................................................................. 1

II. LEGAL ARGUMENT .............................................................................................. 2

   A. Preliminary Approval is Appropriate. ................................................................. 2

      1. There is a bona fide dispute regarding the amount of damages and whether Defendants violated the FLSA. ............................................................................... 5

      2. The Settlement is fair and reasonable based on the attendant risks of continued litigation. .................................................................................................................. 8

      3. The Settlement was reached as a result of arm's length bargaining in the midst of adversarial litigation and is not collusive ................................................................ 9

      4. The Notice is Proper. ........................................................................................ 10

III. CONCLUSION ....................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*American Employers' Ins. Co. V. King Resources Co.,* 1975 U.S. Dist. LEXIS 12910, *11 (D. Colo. Apr. 10, 1975) .................................................................................................... 3

*Baouch v. Werner Enters.,* 2014 U.S. Dist. LEXIS 64981 (D. Neb. May 12, 2014) ................... 11

*Bozak v. FedEx Ground Package Sys., Inc.*, 2014 U.S. Dist. LEXIS 106042, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) ................................................................................................ 9

*Donovan v. American Airlines, Inc.* 686 F.2d 267 (5th Cir. 1982) ............................................... 7

*Felix v. Thai Basil At Thornton, Inc.,* 2015 U.S. Dist. LEXIS 62020, *3 (D. Colo. May 6, 2015).6

*Flores v. One Hanover, LLC, 2014 U.S. Dist. LEXIS 78269*, at *6 (S.D.N.Y. June 9, 2014) ...... 10

*Forauer v. Vt. Country Store, Inc.*, 2015 U.S. Dist. LEXIS 5604, *15-16 (D. Vt. Jan. 16, 2015) 5, 8, 10

*Fowler v. Incor*, 279 Fed. Appx. 590, 599 (10th Cir. 2008) ............................................................ 7

*Goldsby v. Seating,* 2013 U.S. Dist. LEXIS 174668 (S.D. Ala. Dec. 13, 2013) ............................ 4

*Hernandez v. Tabak*, 2013 U.S. Dist. LEXIS 51852, 2013 WL 1562803, at *1 (S.D.N.Y. Apr. 10, 2013) ..................................................................................................................................... 10

*Hosier v. Mattress Firm, Inc.*, 2012 U.S. Dist. LEXIS 94958, *3 (M.D. Fla. June 8, 2012) ......... 5

*In re Thornburg Mortg.,* 912 F.Supp.2d 1178, 1227 (D. N.M. 2012) ........................................... 3

*In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980) .................................................. 5

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) .................................... 3

*Keller v. T.D. Bank, N.A.*, 2014 U.S. Dist. LEXIS 155889 14 (E. D. Pa. 2014) ......................... 11

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ........................................................................................................................................ 3

*Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014) ........................................ 10

*Lliguichuzhca v. Cinema 60*, 948 F. Supp. 2d 362, 365-66 (S.D.N.Y. June 5, 2013) ................. 10

*Lynn's Food Stores v. United States,* 679 F.2d 1350, 1354 (11th Cir. 1982) ............................ 4, 5

*McGee v. Annes Choice*, 2014 U.S. Dist. LEXIS 75840 (E.D. Pa. 2013) ................................... 11

*Moore v. Ackerman Inv. Co.*, 2009 U.S. Dist. LEXIS 78725, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ................................................................................................................................... 4

*Nance v. May Trucking Co.*, Case No. 3:12-cv-01655-HZ (D. Or. Jan. 15, 2014) ........................ 8

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ............................. 3

*Ortega v. Uponor, Inc. (In re Uponor, Inc.)*, 716 F.3d 1057, 1063 (8th Cir. 2013) ...................... 3

*Peterson v. Mortg. Sources, Corp.*, 2011 U.S. Dist. LEXIS 95523, *17 (D. Kan. Aug. 24, 2011) 4

*Petrone v. Werner Enters.*, 2013 U.S. Dist. LEXIS 96375 (D. Neb. July 10, 2013) ................ 8, 11

*Punter v. Jasmin Int'l Corp.*, 2014 U.S. Dist. LEXIS 138490 (D. NJ. 2014) ................................ 8

*Robles v. Brake Masters Sys.*, 2011 U.S. Dist. LEXIS 14432, *50 (D.N.M. Jan. 31, 2011) ...... 4, 5

*Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ...................................................... 4

*Stoneback v. Artsquest, Inc.*, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. 2013) ............................. 11

*Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) .................................. 3

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ................................. 3

*White v. NFL*, 836 F. Supp. 1458, 1466 (D. Minn. 1993) ............................................................. 5

**Other Authorities**

NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) .............................................................. 4

United States Dept. of Labor Field Operations Handbook, Chapter 31, 31(b)(09), *Hours worked by truck drivers, including team drivers* (current as of June 1, 2015, revised September 19, 1996) ........................................................................................................................................ 7

**Regulations**

29 C.F.R. § 785.22 ............................................................................................................................ 7

29 C.F.R. §785.18 ............................................................................................................................. 7

29 C.F.R. §785.22 ............................................................................................................................. 7

## I. INTRODUCTION

Subject to this Court's preliminary and final approval, the Parties have reached a settlement in this matter. Following more than two years of litigation and a 10-hour mediation session held before Kathryn Miller, a nationally-recognized mediator, the Parties reached a preliminary settlement wherein C.R. England, Inc. ("C.R. England") will pay five million dollars ($5,000,000.00) to settle all claims in this action. The settlement resolves all claims in this action, including allegations that C.R. England failed to pay minimum wage in violation of the Fair Labor Standards Act ("FLSA").

This action was originally filed by Kofi Campbell and seven other plaintiffs on April 12, 2013. The lawsuit asserts that C.R. England failed to pay at least minimum wage for all hours worked by its over-the-road truck drivers while such drivers were in orientation, in training, and driving over-the-road. Following conditional certification of this matter pursuant to the FLSA, nearly 11,000 individuals filed Consent Forms to become party plaintiffs.

The Parties engaged in significant litigation efforts prior to settlement. Written discovery has been extensive and time consuming. Plaintiffs requested, and Defendants produced, policy and practice documents pertaining to each of the alleged policies Plaintiffs contended were unlawful in this lawsuit. Defendants further produced over *ten million* (10,000,000+) driver log entries pertaining to 8,500 drivers in the class. Full pay records were also produced for such individuals. Plaintiffs and Defendants both retained separate experts to analyze the records to determine the extent of damages should Plaintiffs prevail on their theories of liability. In addition, Plaintiffs deposed a designee of Defendants to better assess the damages and allegations made in the litigation. Such efforts allowed both sides to further understand the allegations and potential exposure at issue. It was only following this extensive discovery that the Parties attended a private mediation before Kathryn Miller.

Accordingly, the pending settlement proposal was the result of substantial discovery and was the product of adversarial negotiations which culminated after approximately two years of litigation. Counsel for the Parties and the Parties themselves have carefully evaluated the risks, time, and costs associated with continuing this litigation. The settlement proposal ultimately reached does not provide Plaintiffs the equivalent of their best day in court; it clearly, however, provides them substantially more than they would do on their worst day. It represents a fair compromise to what will otherwise be a long and uncertain path of litigation for both Parties.

The settlement agreement provides that C.R. England will fund a Settlement Fund of $5,000,000 to settle this action. There is no "claims made" mechanism or similar procedure which will be required of class members to receive payment; rather, every eligible party plaintiff will be issued a check from the Settlement Fund. Every such party plaintiff will be releasing all claims which are based on the underlying facts, including all FLSA and minimum wage claims they have against C.R. England which were incurred through the date of preliminary approval.

Accordingly, the Parties make this joint motion: (1) for preliminary approval of the settlement with respect to the FLSA claims asserted; (2) to certify the collective action for purposes of settlement; (3) to facilitate Notice of the Proposed Settlement to Class Members; (4) to set deadlines for objecting to the settlement; and (5) to set a date for the final approval hearing.

## II. LEGAL ARGUMENT

### A. Preliminary Approval is Appropriate.

The law favors compromise and settlement of collective and class action suits. *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014); *In re Thornburg Mortg.,* 912 F.Supp.2d 1178, 1227 (D. N.M. 2012); *American Employers' Ins. Co. V. King Resources Co.,* 1975 U.S. Dist. LEXIS 12910, *11 (D. Colo. Apr. 10, 1975) ("there is a strong public policy favoring equitable settlements of complex, multi-party litigation which might otherwise consume many

months of court time over a period of years"); *see also Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) (in a class action context, providing that "[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"); *Ortega v. Uponor, Inc. (In re Uponor, Inc.)*, 716 F.3d 1057, 1063 (8th Cir. 2013) (in a class action context, providing that "[a] settlement agreement is presumptively valid."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."); NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Collective action settlements under the FLSA must be approved by the district court. *Robles v. Brake Masters Sys.*, 2011 U.S. Dist. LEXIS 14432, *50 (D.N.M. Jan. 31, 2011) (*citing Lynn's Food Stores v. United States,* 679 F.2d 1350, 1354 (11th Cir. 1982)); *Peterson v. Mortg. Sources, Corp.*, 2011 U.S. Dist. LEXIS 95523, *17 (D. Kan. Aug. 24, 2011). In determining whether approval is appropriate, courts consider whether the settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.*

3

While Fed R. Civ. P. 23 class action settlements have the benefit of substantial jurisprudence directing courts as to the requirements for approving a class settlement, FLSA case law is not nearly as developed. Some courts have held that there is no requirement for a court to engage in a two-step settlement approval process, as there is with proposed Rule 23 settlements. *See, e.g., Moore v. Ackerman Inv. Co.*, 2009 U.S. Dist. LEXIS 78725, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness hearing' on a proposed settlements, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *Goldsby v. Seating,* 2013 U.S. Dist. LEXIS 174668 (S.D. Ala. Dec. 13, 2013) (holding that preliminary fairness hearing was not required under §216(b) but holding that opt-in plaintiffs should be given notice of settlement and right to object). Other courts have followed the two-step process required by Rule 23 settlements to ensure that class members are informed regarding the settlement and have an opportunity to object if desired. *See, e.g. Hosier v. Mattress Firm, Inc.*, 2012 U.S. Dist. LEXIS 94958, *3 (M.D. Fla. June 8, 2012) (approving the settlement after notice to the opt-in plaintiffs and a fairness hearing); *Forauer v. Vt. Country Store, Inc.*, 2015 U.S. Dist. LEXIS 5604, *6 (D. Vt. Jan. 16, 2015) (same). Because the instant matter involves a multi-million dollar settlement fund and resolves the claims of more than 10,000 class members, Plaintiffs here request the Court adopt the two-step approval process for this FLSA settlement (i.e., notice to opt-in plaintiffs and an opportunity to object), as this process ensures that due process rights of all collective action plaintiffs will be protected.

Plaintiffs here accordingly ask the Court to preliminarily approve the FLSA settlement. To approve an FLSA settlement, this Court must "scrutiniz[e] the settlement for fairness," and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over

4

FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d at 1353-55; *see also Robles v. Brake Masters Sys.*, 2011 U.S. Dist. LEXIS 14432, *51-52 (D.N.M. Jan. 31, 2011).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. NEWBERG § 11.25. The standard at preliminary approval is whether the settlement falls "within the range of possible approval and whether the proposed notice and method by which notice would be given [satisfies] the requirements of due process." *White v. NFL*, 836 F. Supp. 1458, 1466 (D. Minn. 1993). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); NEWBERG § 11.25.

The above standards are easily met here. The proposed settlement was reached after substantial and lengthy litigation, which involved motion practice, depositions, and voluminous written discovery.

After significant litigation, the Parties attended a mediation session before Kathryn Miller of Alternative Dispute Resolution Inc. The mediation lasted all day and resulted in significant concessions from both sides. The case did not settle at the mediation but settled shortly thereafter with the continued assistance of Ms. Miller. The settlement provides a fair compromise of the claims asserted. Accordingly, the settlement was not the result of some type of backdoor agreement but instead the result of the Parties and their counsel fully evaluating the risks of litigation and the benefits of settlement under the auspices of an experienced class action, employment law mediator.

> **1. There is a bona fide dispute regarding the amount of damages and whether Defendants violated the FLSA.**

In order to provide the court with sufficient information to determine whether a bona fide dispute exists, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Felix v. Thai Basil At Thornton, Inc.,* 2015 U.S. Dist. LEXIS 62020, *3 (D. Colo. May 6, 2015).

Here, Plaintiffs contend that they were paid below the federal minimum wage for all hours worked because they contend that Defendants failed to properly calculate the amount of working hours each over-the-road driver worked during each workweek while employed by Defendants. Specifically, the issues in dispute are as follows:

1. Plaintiffs assert that they were required to participate in a classroom orientation at the start of their employment which was not paid. Defendants contend that such time is pre-employment and, thus, no compensation was necessary. The amount of time at issue for this period was approximately 25 hours (if such time is work time, the damages per driver would be approximately $181.25, or about $1.7 million in the aggregate). Whether initial hire orientation constitutes compensable work is a mixed question of law and fact. *Fowler v. Incor*, 279 Fed. Appx. 590, 599 (10th Cir. 2008) (training which is required by the employer is work and must be paid); *but see Donovan v. American Airlines, Inc.* 686 F.2d 267 (5th Cir. 1982) (trainees were not employees when they participated in a multi-week training program which was similar to programs run at vocational schools and where trainees were not guaranteed a job).

2. Plaintiffs contend that a substantial amount of time which over-the-road truck drivers spend over-the-road constitutes working time, including short rest breaks of less than 20 minutes, *see* 29 C.F.R. §785.18 ("rest periods of short duration, running from 5 minutes to about 20 minutes . . . must be counted as hours worked"); sleeper berth time beyond 8 hours per day, *see* 29 C.F.R. §785.22 (when on duty for more than 24 hours, up to 8 hours of sleep time may be credited as non-work time), and all time designated "on duty" by the Dept. of Transportation. Based on the records produced in this matter, Plaintiffs estimated the aggregate (non-liquidated) damages for "on duty" time was $1.4 million, for short rest breaks was $225,000, and for sleeper berth time was $10 million. Defendants contested the compensability of the rest breaks and sleeper berth time.

6

3. During the pendency of this litigation, Defendants paid approximately five hundred thousand dollars ($500,000) to collective action members (without any request to release any claim).[1] Defendants contend that same was paid in response to a wage and hour audit conducted by the U.S. Department of Labor. Defendants also contended that, because they only pay drivers for trips after receipt of certain pay records, they had already paid a significant amount of the wages Plaintiffs contended were due. Defendants further dispute that any off-duty DOT time was work time, and thus disputed whether they owed any compensation for anything other than DOT on-duty time. Based on these factors, Defendants claimed they had fully paid plaintiffs.

The law regarding the compensability of sleeper berth for over-the-road drivers is continuing to develop. Plaintiffs contend that the DOL regulatory framework provides that sleeper berth time beyond 8 hours per day is compensable. *See* 29 C.F.R. § 785.22; United States Dept. of Labor Field Operations Handbook, Chapter 31, 31(b)(09), *Hours worked by truck drivers, including team drivers* (current as of June 1, 2015, revised September 19, 1996), *available online at* http://www.dol.gov/whd/FOH/FOH_Ch31.pdf. Plaintiffs contend that two district courts have issued decisions favorable to Plaintiffs' claims. *See Punter v. Jasmin Int'l Corp.*, 2014 U.S. Dist. LEXIS 138490 (D. NJ. 2014) (a default judgment case) (default judgment allowing recovery for sleeper berth time beyond 8 hours per day for over-the-road truck drivers who are on a continuous tour of duty); *Petrone v. Werner Enters.*, 2013 U.S. Dist. LEXIS 96375 (D. Neb. 2013) (certifying a class of over-the road truck drivers who sought compensation for time in a truck's sleeper berth beyond 8 hours per day after determining that a class could not be certified if the time was not *per se* compensable).

Defendants, on the other hand, dispute that this time is compensable and will point to authority it contends supports its position. Defendants contend that the D.O.T. hours of service

---

[1] This amount was not paid pursuant to the settlement in *Jasper v. C.R. England*; rather, this was a separate amount, which Defendants contend was paid in response to an audit conducted by the U.S. Department of Labor.

rules govern this issue. Additionally, Defendants assert that *Nance v. May Trucking Co.*, Case No. 3:12-cv-01655-HZ (D. Or. Jan. 15, 2014) provides that the sleeper berth time at issue here would be non-compensable.

There is accordingly a dispute both legally and factually relating to whether Defendants' conduct violated the law.

### 2. The Settlement is fair and reasonable based on the attendant risks of continued litigation.

"The Settlement Agreement was reached as a result of a contested litigation to resolve bona fide disputes—both factual and legal disputes that remain unresolved." *Forauer v. Vt. Country Store, Inc.*, 2015 U.S. Dist. LEXIS 5604, *15-16 (D. Vt. Jan. 16, 2015) (upholding fairness of settlement where the parties were represented by counsel, there was a bona fide dispute, and the settlement was fair and reasonable); *see also Bozak v. FedEx Ground Package Sys., Inc.*, 2014 U.S. Dist. LEXIS 106042, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA settlement and noting that settlement was reached after negotiations concerning "the uncertain legal and factual issues involved").

Additionally, the claims were investigated both factually and legally by both sides. To calculate the hours worked by over-the-road truck drivers (and to determine potential damages), Plaintiffs retained an expert data analyst, Daniel Regard of iDiscoverySolutions, to calculate minimum wage violations assuming that the time alleged to be compensable under Plaintiffs' theories of liability was held compensable. Mr. Regard reviewed over ten million driver log records and time records for over 8,500 class members, as well as their pay records for such time, which were used to extrapolate damages class-wide. Those damage calculations are referenced above. Those amounts do not include liquidated damages, which could potentially double the award. However, neither liquidated damages nor compensatory damages were assured if litigation

8

continued. And while both sides in this litigation believe they have meritorious positions, both concede that their positions are subject to considerable risk as to liability and damages. In particular, a trial on the merits would involve significant risks to Plaintiffs because of risks connected with proving FLSA collective action status and because of the fact-intensive nature of proving liability under the FLSA and in light of the defenses available to Defendants.

To prove liability, Plaintiffs would have to defeat Defendants' arguments that Plaintiffs were properly paid for all compensable time and Defendants' legal arguments that the resting time at issue is not compensable. Defendants further disputed the accuracy and reliability of Plaintiffs' damage calculations.

While Plaintiffs believe their claims are meritorious and Defendants likewise believe their defenses are meritorious, counsel for the Parties are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates such uncertainty in a fair and reasonable manner.

Accordingly, the settlement falls within the range of reasonableness and justifies preliminary approval.

### 3. The Settlement was reached as a result of arm's length bargaining in the midst of adversarial litigation and is not collusive.

The Settlement Agreement here was entered into "after an investigation of the claims and defenses," *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014), and after the Parties engaged in "extensive discovery and damages calculations." *Flores v. One Hanover, LLC, 2014 U.S. Dist. LEXIS 78269*, at *6 (S.D.N.Y. June 9, 2014). The Settlement Agreement is "the product of negotiation between represented parties," which supports a finding that it "did not come about because of 'overreaching' by the employer." *Lliguichuzhca v. Cinema 60*, 948 F. Supp. 2d

9

362, 365-66 (S.D.N.Y. June 5, 2013) ("Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable."); *accord Hernandez v. Tabak*, 2013 U.S. Dist. LEXIS 51852, 2013 WL 1562803, at *1 (S.D.N.Y. Apr. 10, 2013) (concluding settlement "negotiated at arm's length [was] not the product of coercion"); *see also Forauer v. Vt. Country Store, Inc.*, 2015 U.S. Dist. LEXIS 5604, *15-16 (D. Vt. Jan. 16, 2015).

Additionally, Plaintiffs are represented by counsel who are well informed and practiced in collective wage and hour litigation, and are realistic and knowledgeable of the risks and benefits of the settlement. Plaintiffs' counsel has substantial experience litigating complex wage and hour actions, including class actions and certified collective actions with tens of thousands of class members. (Exhibit 1, Swidler Declaration at ¶¶6-7). *See also Keller v. T.D. Bank, N.A.*, 2014 U.S. Dist. LEXIS 155889 14 (E.D. Pa. 2014) (finding that Mr. Swartz and Swidler "have considerable experience handling class and collective action disputes" and noting that they "represented the Named Plaintiffs and the prospective class competently, diligently, and with professionalism throughout the course of this litigation."); *McGee v. Annes Choice*, 2014 U.S. Dist. LEXIS 75840 (E.D. Pa. 2013) (finding Mr. Swartz and Mr. Swidler to be "well-versed in FLSA cases and skilled in litigating and settling wage-and-hour litigation"); *Stoneback v. Artsquest, Inc.*, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. 2013) (finding that Mr. Swidler and Mr. Swartz have "handled numerous class action lawsuits" and that their firm "is qualified to represent the class as class counsel"). Plaintiffs' counsel has further been certified as class counsel in pending similar litigation wherein they represent tens of thousands of over-the-road drivers for alleged violations of state and federal minimum wage laws. *See Petrone v. Werner Enters.*, 2013 U.S. Dist. LEXIS 96375 (D. Neb. July 10, 2013); *Baouch v. Werner Enters.,* 2014 U.S. Dist. LEXIS 64981 (D. Neb. May 12, 2014).

    **4.**     **The Notice is Proper.**

Attached to this motion is the proposed notice to collective action members. Because all collective members have provided contact information on their Consent Forms, the notice will be sent by First Class Mail.

The means of the Notice largely mirrors the notice which this Court approved during the conditional certification proceeding. Class Members will receive a notice mailed to their last known address with language advising them that a preliminary settlement has been reached. The notice itself fully explains the litigation, the proposed settlement, deadlines pertaining to the settlement, the release, the representative plaintiffs, Class Counsel, objection procedures, the settlement allocation, the requests for attorneys' fees, costs, and the service awards.[2]

Such Notice amply complies with due process and warrants preliminary approval of the settlement. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the settlement, order Plaintiffs to facilitate notice, set the deadlines to object to be 45 days from the date of mailing, and order a final approval hearing to occur approximately 60 days after preliminary approval.

### III. CONCLUSION

For the reasons as stated above, the parties request that this Honorable Court grant their motion and preliminarily approve the class settlement in this matter, grant final approval to the collective certification for purposes of settlement, and schedule a final settlement fairness hearing approximately sixty days following preliminary approval, or as soon thereafter as the parties may be heard.

---

[2] Because attorney's fees, costs, and service awards are not provided until final approval, Plaintiffs have not briefed here the basis for such awards. Plaintiffs will provide a full accounting and basis for same in the motion for final approval.

Respectfully submitted,

*/s Justin L. Swidler*
Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Hwy. N., Ste. 402
Cherry Hill, NJ 08003
Phone: (856) 685-7420
Fax: (856) 685-7417


/s/ *Scott A. Hagen*
Scott A. Hagen
Michael E. Blue
Liesel B. Stevens
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Post Office Box 45385
Salt Lake City, Utah 84145-0385
Phone: (801) 532-1500
Facsimile: (801) 532-7543

June 26, 2015