## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **KOFI CAMPBELL,** *et al.*<br><br>               **Plaintiffs,**<br><br>    **v.**<br><br>**C.R. ENGLAND, INC. d/b/a ENGLAND CARRIER SERVICES,** *et al.*<br><br>            **Defendants.** | **MOTION FOR FINAL APPROVAL OF FLSA SETTLEMENT AND RELATED RELIEF**<br><br>**DOCKET NO: 13-262** |

Plaintiffs, by and through undersigned counsel, hereby seek an Order:

1.  Granting final approval to the FLSA Collective Action Settlement, filed with this Court at ECF Doc. No. 128-1, and ordering that Named and all opt-in Plaintiffs are subject to the release of claims therein;

2.  Ordering Defendants, pursuant to the Settlement Agreement, to wire the entire Settlement Fund of $5,000,000 (Five Million Dollars) to the Claims Administrator no later than forty-five days after the entry of its Order;

3.  Ordering the Claims Administrator to distribute the Settlement Fund to all opt-in Plaintiffs consistent with the Settlement Agreement;

4.  Granting Class Counsel's request for its reasonable attorney's fees of 1/3 of the Settlement Fund and for reimbursement of its out-of-pocket litigation costs;

5.  Granting the Claims Administrator its reasonable fees and costs incurred in administering the settlement; and

6.  Dismissing this matter with prejudice without costs or fees to either side, except as provided in the Settlement Agreement and the Court's Order.

Respectfully submitted,

*/s Justin L. Swidler*
Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Hwy. N., Ste. 402
Cherry Hill, NJ 08003
Phone: (856) 685-7420
Fax: (856) 685-7417

September 10, 2015

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KOFI CAMPBELL, *et al.*, | Case No.: 13-262 |
| Plaintiffs, | |
| v. | |
| C.R. ENGLAND, INC., *et al.* | |
| Defendants. | |

## <u>PLAINTIFFS' BRIEF IN SUPPORT OF APPROVAL OF COLLECTIVE ACTION SETTLEMENT</u>

Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Hwy. N., Ste. 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420

September 10, 2015

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................... 1

II.   LEGAL ARGUMENT .......................................................................... 3

   A.    Final Approval is Appropriate. ................................................... 3

      1.    There is a bona fide dispute regarding the amount of damages and whether Defendants violated the FLSA. ............................................... 5

      2.    The Settlement is fair and reasonable based on the attendant risks of continued litigation. ....................................................................... 8

      3.    The Settlement was reached as a result of arm's length bargaining in the midst of adversarial litigation and is not collusive. .............................. 9

      4.    The reaction of class members has been entirely positive. ......................... 11

   B.    The Request Attorney's fees are reasonable and should be approved. ....................... 11

   C.    Class Counsel should be reimbursed for its out-of-pocket litigation costs. .................. 25

   D.    The Claims Administrator should be provided its reasonable fee for facilitating notice of the preliminarily approved settlement, calculating allocations of the settlement, and distributing payments to opt-in plaintiffs. ................................................. 26

   E.    This Court should award Named Plaintiffs the requested service payments. ............... 27

III.  CONCLUSION ..................................................................................... 29

## **TABLE OF AUTHORITIES**

### Cases

*American Employers' Ins. Co. V. King Resources Co.,* 1975 U.S. Dist. LEXIS 12910, *11 (D. Colo. Apr. 10, 1975) ............................................................................................. 3

*Baouch v. Werner Enters.,* 2014 U.S. Dist. LEXIS 64981 (D. Neb. May 12, 2014) .................. 11

*Bozak v. FedEx Ground Package Sys., Inc.*, 2014 U.S. Dist. LEXIS 106042, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014)............................................................................ 8

*Donovan v. American Airlines, Inc.* 686 F.2d 267 (5th Cir. 1982)................................................ 6

*Felix v. Thai Basil At Thornton, Inc.,* 2015 U.S. Dist. LEXIS 62020, *3 (D. Colo. May 6, 2015) 6

*Flores v. One Hanover, LLC, 2014 U.S. Dist. LEXIS 78269,* at *6 (S.D.N.Y. June 9, 2014)........ 9

*Forauer v. Vt. Country Store, Inc*., 2015 U.S. Dist. LEXIS 5604, *15-16 (D. Vt. Jan. 16, 2015) 8, 10

*Forauer v. Vt. Country Store, Inc*., 2015 U.S. Dist. LEXIS 5604, *6 (D. Vt. Jan. 16, 2015) ........ 4

*Fowler v. Incor*, 279 Fed. Appx. 590, 599 (10th Cir. 2008)......................................................... 6

*Goldsby v. Seating,* 2013 U.S. Dist. LEXIS 174668 (S.D. Ala. Dec. 13, 2013) ........................... 4

*Hernandez v. Tabak*, 2013 U.S. Dist. LEXIS 51852, 2013 WL 1562803, at *1 (S.D.N.Y. Apr. 10, 2013) ...................................................................................................................... 10

*Hosier v. Mattress Firm, Inc*., 2012 U.S. Dist. LEXIS 94958, *3 (M.D. Fla. June 8, 2012) ......... 4

*In re Schering-Plough Corp.*, 2013 U.S. Dist. LEXIS 147981 (D.N.J. Aug. 27, 2013).............. 24

*In re Thornburg Mortg.,* 912 F.Supp.2d 1178, 1227 (D. N.M. 2012) ........................................... 3

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).................................... 3

*Keller v. T.D. Bank, N.A*., 2014 U.S. Dist. LEXIS 155889 14 (E. D. Pa. 2014) .......................... 10

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ....................................................................................................................... 3

*Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014) ........................................... 9

*Lliguichuzhca v. Cinema 60*, 948 F. Supp. 2d 362, 365-66 (S.D.N.Y. June 5, 2013) ................. 10

*Lynn's Food Stores v. United States,* 679 F.2d 1350, 1354 (11th Cir. 1982)........................... 4, 5

*McGee v. Annes Choice*, 2014 U.S. Dist. LEXIS 75840 (E.D. Pa. 2013) .................................... 10

*Moore v. Ackerman Inv. Co.*, 2009 U.S. Dist. LEXIS 78725, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ............................................................................................................................ 4

*Nance v. May Trucking Co.*, Case No. 3:12-cv-01655-HZ (D. Or. Jan. 15, 2014) ................. 8, 14

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ............................ 3

*Ortega v. Uponor, Inc. (In re Uponor, Inc.)*, 716 F.3d 1057, 1063 (8th Cir. 2013) ...................... 3

*Peterson v. Mortg. Sources, Corp.*, 2011 U.S. Dist. LEXIS 95523, *17 (D. Kan. Aug. 24, 2011) 4

*Petrone v. Werner Enters.*, 2013 U.S. Dist. LEXIS 96375 (D. Neb. 2013) ........................... 14, 20

*Petrone v. Werner Enters.*, 2013 U.S. Dist. LEXIS 96375 (D. Neb. July 10, 2013) .................... 11

*Petrone v. Werner Enters.*, 2015 U.S. Dist. LEXIS 101053 (D. Neb. Aug. 3, 2015) ................... 7

*Petrone v. Werner Enters.*, 2015 U.S. Dist. LEXIS 112407 (D. Neb. Aug. 25, 2015) ................. 7

*Punter v. Jasmin Int'l Corp.*, 2014 U.S. Dist. LEXIS 138490 (D. NJ. 2014) ............................... 7

*Robles v. Brake Masters Sys.*, 2011 U.S. Dist. LEXIS 14432, *50 (D.N.M. Jan. 31, 2011)...... 3, 5

*Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979)................................................... 3

*Stoneback v. Artsquest, Inc.*, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. 2013) ............................ 10

*Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) ................................. 3

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) ................................ 3

## Statutes

29 U.S.C. § 216(b) ......................................................................................................................... 1

## Other Authorities

NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ................................................................... 3

United States Dept. of Labor Field Operations Handbook, Chapter 31, 31(b)(09), *Hours worked by truck drivers, including team drivers* (current as of June 1, 2015, revised September 19, 1996) ......................................................................................................................................... 7

## Regulations

29 C.F.R. § 785.22 ...................................................................................................................... 6, 7

29 C.F.R. §785.18 ........................................................................................................................... 6

## I.    INTRODUCTION

This action was originally filed by Kofi Campbell and seven other plaintiffs on April 12, 2013.  The lawsuit asserts that C.R. England failed to pay at least minimum wage for all hours worked by its over-the-road truck drivers while such drivers were in orientation, in training, and driving over-the-road.  Following conditional certification of this matter pursuant to the FLSA, nearly 11,000 individuals filed Consent Forms to become party plaintiffs.

On July 6, 2015, after more than two years of litigation, which included significant and substantial discovery (which included the review and analysis of more than *10,000,000* driver log records for over 8,500 class members), expert analysis of same, motion practice and related hearings, facilitated notice and conditional certification under the FLSA, and a 10-hour mediation held before Kathryn Miller, a nationally-recognized mediator, and after full briefing on the matter, this Court granted preliminary approval to the pending FLSA collective action settlement.

The settlement agreement provides that C.R. England will fund a Settlement Fund of $5,000,000 to settle this action.  There is no "claims made" mechanism or similar procedure which will be required of members to receive payment; rather, every eligible party plaintiff will be issued a check from the Settlement Fund.  There is also no reversion – all money in the fund will be distributed.  Every such party plaintiff will be releasing all claims which are based on the underlying facts, including all FLSA and minimum wage claims they have against C.R. England which were incurred through the date of preliminary approval.

As discussed in the Parties' brief in support of preliminary approval, the law remains unclear whether this Court must engage in a two-step preliminary and final approval process in an FLSA collective action (as this case is not a certified class action brought under Fed. R. Civ. P. 23, but instead is solely a collective action brought pursuant to 29 U.S.C. § 216(b)).  Regardless, due to the number of collective action members who are resolving their claims, and to ensure that each

1

member was given a proper opportunity to be heard, the Parties jointly requested, and this Court ordered, a notice and objection period prior to final approval.  Such a procedure, mandatory in Rule 23 class actions, allows collective action members to bring any concerns regarding the settlement to the Court's attention prior to the Court entering an order concluding the case.  The use of this procedure has permitted the Court and the Parties to accurately gauge the reaction of collective action members to the preliminarily approved settlement.

The collective action members' reaction to the settlement has been extremely positive; there is not a *single* objection, from a collective action with more than 10,000 opt-in plaintiffs, as to any aspect of the settlement.  The extremely positive reaction of the collective action members demonstrates that the opt-in Plaintiffs want to be paid now and are pleased with the compromise reached in this settlement.  Additionally, all of the relevant factors this Court is to examine when determining the reasonableness and fairness of the settlement heavily weigh in favor of approving the settlement.

Plaintiffs further seek this Court to approve the requested attorneys' fees and costs, and the requested service payments to the Named Plaintiffs.  As briefed below, Class Counsel has litigated this matter for over 2 years, and has spent more than 1,200 hours of attorney time litigating this claim, and the requested fee is well in line with fees routinely awarded to class counsel in wage and hour class action settlements.  Likewise, the service payment to the Named Plaintiffs are well in line with service payments typically approved.  And as indicated above, not a single class member has objected to the attorneys' fees, costs, or service payments requested.

Thus, for the reasons stated above and fully briefed below, this Court should grant final approval to the settlement.

## II.    LEGAL ARGUMENT

### A.    <u>Final Approval is Appropriate.</u>

The law favors compromise and settlement of collective and class action suits. *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014); *In re Thornburg Mortg.,* 912 F.Supp.2d 1178, 1227 (D. N.M. 2012); *American Employers' Ins. Co. V. King Resources Co.,* 1975 U.S. Dist. LEXIS 12910, *11 (D. Colo. Apr. 10, 1975) ("there is a strong public policy favoring equitable settlements of complex, multi-party litigation which might otherwise consume many months of court time over a period of years"); *see also Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) (in a class action context, providing that "[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"); *Ortega v. Uponor, Inc. (In re Uponor, Inc.)*, 716 F.3d 1057, 1063 (8th Cir. 2013) (in a class action context, providing that "[a] settlement agreement is presumptively valid."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."); NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Collective action settlements under the FLSA must be approved by the district court. *Robles v. Brake Masters Sys*., 2011 U.S. Dist. LEXIS 14432, *50 (D.N.M. Jan. 31, 2011) (*citing Lynn's Food Stores v. United States,* 679 F.2d 1350, 1354 (11th Cir. 1982)); *Peterson v. Mortg. Sources, Corp.*, 2011 U.S. Dist. LEXIS 95523, *17 (D. Kan. Aug. 24, 2011).   In determining whether approval is appropriate, courts consider whether the settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *Id.*

While Fed R. Civ. P. 23 class action settlements have the benefit of substantial jurisprudence directing courts as to the requirements for approving a class settlement, FLSA case law is not nearly as developed.  Some courts have held that there is no requirement for a court to engage in a two-step settlement approval process, as there is with proposed Rule 23 settlements. *See, e.g., Moore v. Ackerman Inv. Co.*, 2009 U.S. Dist. LEXIS 78725, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness hearing' on a proposed settlements, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *Goldsby v. Seating,* 2013 U.S. Dist. LEXIS 174668 (S.D. Ala. Dec. 13, 2013) (holding that preliminary fairness hearing was not required under §216(b) but holding that opt-in plaintiffs should be given notice of settlement and right to object).  Other courts have followed the two-step process required by Rule 23 settlements to ensure that class members are informed regarding the settlement and have an opportunity to object if desired.  *See, e.g. Hosier v. Mattress Firm, Inc*., 2012 U.S. Dist. LEXIS 94958, *3 (M.D. Fla. June 8, 2012) (approving the settlement after notice to the opt-in plaintiffs and a fairness hearing); *Forauer v. Vt. Country Store, Inc*., 2015 U.S. Dist. LEXIS 5604, *6 (D. Vt. Jan. 16, 2015) (same).  Because the instant matter involves a multi-million dollar settlement fund and resolves the claims of more than 10,000 class members, Plaintiffs here

requested, and the Court adopted, the two-step approval process for this FLSA settlement (i.e., notice to opt-in plaintiffs and an opportunity to object) to ensure that due process rights of all collective action plaintiffs will be protected.

Plaintiffs here accordingly ask the Court to grant final approval to the FLSA settlement. To approve an FLSA settlement, this Court must "scrutiniz[e] the settlement for fairness," and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d at 1353-55; *see also Robles v. Brake Masters Sys.*, 2011 U.S. Dist. LEXIS 14432, *51-52 (D.N.M. Jan. 31, 2011).

The above standards are easily met here. The proposed settlement was reached after substantial and lengthy litigation, which involved motion practice, depositions, and voluminous written discovery.

After significant litigation, the Parties attended a mediation session before Kathryn Miller of Alternative Dispute Resolution Inc. The mediation lasted all day and resulted in significant concessions from both sides. The case did not settle at the mediation but settled shortly thereafter with the continued assistance of Ms. Miller. The settlement provides a fair compromise of the claims asserted. Accordingly, the settlement was not the result of some type of backdoor agreement but instead the result of the Parties and their counsel fully evaluating the risks of continued litigation and the benefits of settlement under the auspices of an experienced class action, employment law mediator.

> **1.      There is a bona fide dispute regarding the amount of damages and whether Defendants violated the FLSA.**

In order to provide the court with sufficient information to determine whether a bona fide dispute exists, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the

employer's reasons for disputing the employee's right to the claimed wages; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Felix v. Thai Basil At Thornton, Inc.,* 2015 U.S. Dist. LEXIS 62020, *3 (D. Colo. May 6, 2015).

Here, Plaintiffs contend that they were paid below the federal minimum wage for all hours worked because they contend that Defendants failed to properly calculate the amount of working hours each over-the-road driver worked during each workweek while employed by Defendants. Specifically, the issues in dispute are as follows:

    a.  Plaintiffs assert that they were required to participate in a classroom orientation at the start of their employment which was not paid.  Defendants contend that such time is pre-employment and, thus, no compensation was necessary.  The amount of time at issue for this period was approximately 25 hours (if such time is work time, the damages per driver would be approximately $181.25, or about $1.7 million in the aggregate).  Whether initial hire orientation constitutes compensable work is a mixed question of law and fact. *Fowler v. Incor*, 279 Fed. Appx. 590, 599 (10th Cir. 2008) (training which is required by the employer is work and must be paid); *but see Donovan v. American Airlines, Inc.* 686 F.2d 267 (5th Cir. 1982) (trainees were not employees when they participated in a multi-week training program which was similar to programs run at vocational schools and where trainees were not guaranteed a job).

    b.  Plaintiffs contend that a substantial amount of time which over-the-road truck drivers spend over-the-road constitutes working time, including short rest breaks of less than 20 minutes, *see* 29 C.F.R. §785.18 ("rest periods of short duration, running from 5 minutes to about 20 minutes . . . must be counted as hours worked"); sleeper berth time beyond 8 hours per day, *see* 29 C.F.R. §785.22 (when on duty for more than 24 hours, up to 8 hours of sleep time may be credited as non-work time), and all time designated "on duty" by the Dept. of Transportation.  Based on the records produced in this matter, Plaintiffs estimated the aggregate (non-liquidated) damages for "on duty" time was $1.4 million, for short rest breaks was $225,000, and for sleeper berth time was $10 million.  Defendants contested the compensability of the rest breaks and sleeper berth time.

    c.  During the pendency of this litigation, Defendants paid approximately five hundred thousand dollars ($500,000) to collective action members (without any request to

release any claim).[1] Defendants contend that same was paid in response to a wage and hour audit conducted by the U.S. Department of Labor.  Plaintiffs dispute same and assert that same was paid as a result of their efforts in litigation this matter.  Defendants also contended that, because they only pay drivers for trips after receipt of certain pay records, they had already paid a significant amount of the wages Plaintiffs contended were due.  Defendants further dispute that any off-duty DOT time was work time, and thus disputed whether they owed any compensation for anything other than DOT on-duty time.  Based on these factors, Defendants claimed they had fully paid plaintiffs.

The law regarding the compensability of sleeper berth time for over-the-road drivers is continuing to develop.  Plaintiffs contend that the DOL regulatory framework provides that sleeper berth time beyond 8 hours per day is compensable.  *See* 29 C.F.R. § 785.22; United States Dept. of Labor Field Operations Handbook, Chapter 31, 31(b)(09), *Hours worked by truck drivers, including team drivers* (current as of June 1, 2015, revised September 19, 1996), *available online at* http://www.dol.gov/whd/FOH/FOH_Ch31.pdf.  Plaintiffs contend that two district courts have issued decisions favorable to Plaintiffs' claims.  *See Petrone v. Werner Enters.*, 2015 U.S. Dist. LEXIS 101053 (D. Neb. Aug. 3, 2015) (awarding class-wide summary judgment to a class of over-the-road truck drivers who sought compensation for sleeper berth time in excess of 8 hours per day and for short rest breaks of 20 minutes or less in duration)[2]; *Punter v. Jasmin Int'l Corp.*, 2014 U.S. Dist. LEXIS 138490 (D. NJ. 2014) (a default judgment case) (default judgment allowing

---

[1] This amount was not paid pursuant to the settlement in *Jasper v. C.R. England*; rather, this  was a separate amount, which Defendants contend was paid in response to an audit conducted by the U.S. Department of Labor.

[2] This decision was issued after the parties agreed to a settlement in principal and after the Court preliminarily approved the settlement in this matter and represents a significant development in the law in favor of Plaintiffs.  The decision is from a district court from outside this circuit, and the continuing-to-develop legal issues which are at the heart of the instant matter and *Petrone* are made apparent by the *Petrone* Court's decision to grant the employer the unusual opportunity to seek interlocutory review of its order prior to a trial on damages.  *See Petrone v. Werner Enters.*, 2015 U.S. Dist. LEXIS 112407 (D. Neb. Aug. 25, 2015).  The risk of continuing with such claims in the face of unresolved legal issues remains heavy for both sides, and makes settlement here a reasonable and favorable result.

recovery for sleeper berth time beyond 8 hours per day for over-the-road truck drivers who are on a continuous tour of duty).

Defendants, on the other hand, dispute that this time is compensable and will point to authority it contends supports its position.  Defendants contend that the D.O.T. hours of service rules govern this issue.  Additionally, Defendants assert that *Nance v. May Trucking Co.*, Case No. 3:12-cv-01655-HZ (D. Or. Jan. 15, 2014) provides that the sleeper berth time at issue here would be non-compensable.

There is accordingly a dispute both legally and factually relating to whether Defendants' conduct violated the law.

### 2.   The Settlement is fair and reasonable based on the attendant risks of continued litigation.

"The Settlement Agreement was reached as a result of a contested litigation to resolve bona fide disputes—both factual and legal disputes that remain unresolved."  *Forauer v. Vt. Country Store, Inc.*, 2015 U.S. Dist. LEXIS 5604, *15-16 (D. Vt. Jan. 16, 2015) (upholding fairness of settlement where the parties were represented by counsel, there was a bona fide dispute, and the settlement was fair and reasonable); *see also Bozak v. FedEx Ground Package Sys., Inc*., 2014 U.S. Dist. LEXIS 106042, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA settlement and noting that settlement was reached after negotiations concerning "the uncertain legal and factual issues involved").

Additionally, the claims were investigated both factually and legally by both sides.  To calculate the hours worked by over-the-road truck drivers (and to determine potential damages), Plaintiffs retained an expert data analyst, Daniel Regard of iDiscoverySolutions, to calculate minimum wage violations assuming that the time alleged to be compensable under Plaintiffs' theories of liability was held compensable.  Mr. Regard reviewed over ten million driver log

records and time records for over 8,500 class members, as well as their pay records for such time, which were used to extrapolate damages class-wide. Those damage calculations are referenced above. Those amounts do not include liquidated damages, which could potentially double the award. However, neither liquidated damages nor compensatory damages were assured if litigation continued. And while both sides in this litigation believe they have meritorious positions, both concede that their positions are subject to considerable risk as to liability and damages. In particular, a trial on the merits would involve significant risks to Plaintiffs in light of the defenses available to Defendants.

To prove liability, Plaintiffs would have to defeat Defendants' arguments that Plaintiffs were properly paid for all compensable time and Defendants' legal arguments that the resting time at issue is not compensable. Defendants further disputed the accuracy and reliability of Plaintiffs' damage calculations.

While Plaintiffs believe their claims are meritorious and Defendants likewise believe their defenses are meritorious, counsel for the Parties are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates such uncertainty in a fair and reasonable manner.

Accordingly, the settlement falls within the range of reasonableness and justifies final approval.

### 3. The Settlement was reached as a result of arm's length bargaining in the midst of adversarial litigation and is not collusive.

The Settlement Agreement here was entered into "after an investigation of the claims and defenses," *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014), and after the Parties engaged in "extensive discovery and damages calculations." *Flores v. One Hanover, LLC,*

*2014 U.S. Dist. LEXIS 78269*, at *6 (S.D.N.Y. June 9, 2014).  The Settlement Agreement is "the product of negotiation between represented parties," which supports a finding that it "did not come about because of 'overreaching' by the employer."  *Lliguichuzhca v. Cinema 60*, 948 F. Supp. 2d 362, 365-66 (S.D.N.Y. June 5, 2013) ("Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable."); *accord Hernandez v. Tabak*, 2013 U.S. Dist. LEXIS 51852, 2013 WL 1562803, at *1 (S.D.N.Y. Apr. 10, 2013) (concluding settlement "negotiated at arm's length [was] not the product of coercion"); *see also Forauer v. Vt. Country Store, Inc.*, 2015 U.S. Dist. LEXIS 5604, *15-16 (D. Vt. Jan. 16, 2015).

Additionally, Plaintiffs are represented by counsel who are well informed and practiced in collective wage and hour litigation, and are realistic about and knowledgeable of the risks and benefits of the settlement.  Plaintiffs' counsel has substantial experience litigating complex wage and hour actions, including class actions and certified collective actions with tens of thousands of class members.  (Exhibit 1, Swidler Declaration at ¶¶6-7).  *See also Keller v. T.D. Bank, N.A.*, 2014 U.S. Dist. LEXIS 155889 14 (E.D. Pa. 2014) (finding that Mr. Swartz and Swidler "have considerable experience handling class and collective action disputes" and noting that they "represented the Named Plaintiffs and the prospective class competently, diligently, and with professionalism throughout the course of this litigation."); *McGee v. Annes Choice*, 2014 U.S. Dist. LEXIS 75840 (E.D. Pa. 2013) (finding Mr. Swartz and Mr. Swidler to be "well-versed in FLSA cases and skilled in litigating and settling wage-and-hour litigation"); *Stoneback v. Artsquest, Inc.*, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. 2013) (finding that Mr. Swidler and Mr. Swartz have "handled numerous class action lawsuits" and that their firm "is qualified to represent the class as class counsel").  Plaintiffs' counsel has further been certified as class counsel in similar litigation wherein they represent tens of thousands of over-the-road drivers for alleged violations

of state and federal minimum wage laws.  *See Petrone v. Werner Enters.*, 2013 U.S. Dist. LEXIS 96375 (D. Neb. July 10, 2013); *Baouch v. Werner Enters.,* 2014 U.S. Dist. LEXIS 64981 (D. Neb. May 12, 2014).

### 4.     The reaction of class members has been entirely positive.

The Court-approved notice in this case was effectuated to class members on July 24, 2015. (Exhibit 2, Decl. of Jenny Cudworth of KCC at ¶7). The notice itself fully explains the litigation, the proposed settlement, deadlines pertaining to the settlement, the release, the representative plaintiffs, Class Counsel, objection procedures, the settlement allocation, the requests for attorneys' fees, costs, and the service awards.  (Exhibit 2-A, Mailed Notice).

The notice received by opt-in Plaintiffs explains the payments which will be provided to all opt-in Plaintiffs. The lack of any objections supports a finding that opt-in Plaintiffs are satisfied with the settlement and wish for this Court to grant final approval to the settlement, which will result in the opt-in Plaintiffs receiving compensation for their alleged unpaid wages.

Thus, the opt-in Plaintiffs' agreement with the terms of the settlement also supports final approval.  Accordingly, Plaintiffs respectfully that the Court grant final approval of the settlement.

### B.     <u>The Request Attorney's fees are reasonable and should be approved.</u>

Class Counsel is entitled to a fee paid out of the common fund for the benefit of the Class. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980). In class action suits where a fund is recovered and fees are awarded therefrom by the court, the Supreme Court has indicated that computing fees as a percentage of the common fund recovered is the proper approach. *Blum v. Stenson*, 465 U.S. 886, 900 n.16, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). The Tenth Circuit recognizes the propriety of the percentage-of-the fund method when awarding fees.  *See Gottlieb v. Barry*, 43 F.3d 474, 484 (10th Cir. 1994); *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995) (stating that there is a "preference for the

percentage of the fund method" over a lodestar calculation); *In re Core Bond Fund*, 2011 U.S. Dist. LEXIS 112949, *4 (D. Colo. Sept. 30, 2011); *see Whittington v. Taco Bell of Am., Inc.,* 2013 U.S. Dist. LEXIS 161665, *20 (D. Colo. Nov. 13, 2013) (applying percentage of the fund request for attorney's fee in FLSA collective action); *Peterson v. Mortg. Sources, Corp.,* 2011 U.S. Dist. LEXIS 95523 (D. Kan. Aug. 24, 2011) ("This Court has also typically applied the percentage of the fund method when awarding fees in common fund, FLSA collective actions.").

In determining the attorneys' fee request, the Court must consider the factors articulated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). *See Ramos v. Lamm,* 713 F.2d 546, 552 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987). Those factors are as follows: (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee, (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Gottlieb*, 43 F.3d at 483.  Courts also look to the number of objectors to the settlement and the attorney's fees request in determining the reasonableness of the settlement. *See, e.g. Droegemueller v. Petroleum Dev. Corp.*, 2009 U.S. Dist. LEXIS 123875, *12 (D. Colo. Apr. 7, 2009)

Although the Court may consider any or all of the *Johnson* factors, "rarely are all of the *Johnson* factors applicable," particularly in common fund cases. *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 456 (10th Cir. Kan. 1988).   Class Counsel submits that factor seven is not

particularly relevant or applicable here.  Additionally, while Class Counsel has provided a lodestar analysis for this Court to have a full understanding of the reasonableness of the fee request, Class Counsel notes that in common fund cases, the fee request "need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors." *Gottlieb*, 43 F.3d at 483.

### 1. Time and Labor Required

Class Counsel spent more than 1,200 hours working on this matter over the more than two years the case has been pending.  (Swidler Decl. at ¶ 3). The instant case involved substantial discovery and motion practice effort.  To investigate the claims, Class Counsel obtained millions of driver records from Defendants and was required to work with ESI experts and develop algorithms capable of computing class-wide damages.

In addition, to protect the rights of nearly 2,000 opt-in plaintiffs in this case, who would otherwise have been subject to a binding release in a separate class action filed in California, *Jasper v. C.R. England, Inc.*, Class Counsel filed objections on behalf of approximately 2,000 opt-in Plaintiffs in the *Jasper v. C.R. England* case, which ultimately increased the settlement recovery in this matter by permitting nearly 25% of the opt-in plaintiffs to remain in the case, who otherwise faced likely dismissal.

Thus, this factor weighs in favor of the fee request.

### 2. Novelty and Difficulty of Question Presented

The legal issues presented in this case are both novel and difficult.  In this litigation, the largest issue was whether, and under what circumstances, over-the-road truck drivers were entitled to minimum wage for time spent in a truck's sleeper berth.  There is very little legal precedent addressing such issues, and the little precedent that does exist did not exist at the time this case

was filed.  Moreover, two of the three cases are pending appeal.  *Punter v. Jasmin Int'l Corp.*, 2014 U.S. Dist. LEXIS 138490 (D. NJ. Sept. 30, 2014) (holding, in a default judgment case, that such time was compensable work time); *See Petrone v. Werner Enters.*, 2015 U.S. Dist. LEXIS 101053 (D. Neb. Aug. 3, 2015) (class-wide summary judgment on similar claims), *motion to petition for interlocutory appeal granted*, 2015 U.S. Dist. LEXIS 112407 (D. Neb. Aug. 25, 2015) (finding that the legal issues involved are "unclear" and that there is "substantial ground for difference of opinion"); *Nance v. May Trucking Co.*, Case No. 3:12-cv-01655-HZ (D. Or. Jan. 15, 2014) (holding that sleeper berth time was not compensable time where the plaintiffs sought compensation for *all* sleeper berth time when the truck was moving, not just the hours above 8 hours per day), *appeal pending*, 14-35640 (9th Cir. July 30, 2014).

Thus, the legal issues presented in this case were not easily resolved nor are they routine. Instead, Plaintiffs' counsel has sought recovery under novel legal theories which require significant legal analysis.

Thus, this factor weighs in favor of the fee request.

### 3.  Skill Requisite to Perform the Legal Service Properly

Class Counsel demonstrated skill in analyzing the potential claims under the FLSA and the DOL regulatory framework and in prosecuting these claims with diligence and zeal for more than two years.  Given the complexities and the unresolved legal nature of the claims asserted, highly skilled counsel was required to achieve the benefit obtained for the Class here.

Here, Class Counsel has substantial experience in litigating class action wage and hour cases.  As discussed in the accompanying declaration, Justin Swidler and Richard Swartz have litigated more than 60 putative federal wage and hour class actions in the last 5 years, and are currently certified class or collective counsel in 18 wage and hour class actions throughout the

14

United States, collectively representing well over 100,000 workers.  (Swidler Decl. at ¶¶ 23-24). Class Counsel has been previously recognized by other federal courts as being particularly skilled in this area of the law.  *See, e.g. Keller v. T.D. Bank, N.A.*, 2014 U.S. Dist. LEXIS 155889, *14 (E.D. Pa. 2014) (Restrepo, J.) (finding that Mr. Swartz and Swidler "have considerable experience handling class and collective action disputes" and noting that they "represented the Named Plaintiffs and the prospective class competently, diligently, and with professionalism throughout the course of this litigation"); *McGee v. Anne's Choice, Inc.,* 2014 U.S. Dist. LEXIS 75840 (E.D. Pa., June 4, 2014) (Schiller, J.) (finding Mr. Swartz and Mr. Swidler to be "well-versed in FLSA cases and skilled in litigating and settling wage-and-hour litigation"); *Stoneback v. ArtsQuest*, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. June 19, 2013) (Gardner, J.) (finding that Mr. Swidler and Mr. Swartz have "handled numerous class action lawsuits" and that their firm "is qualified to represent the class as class counsel").

Thus, this factor also weighs in favor of granting approval of the fee request here.

### 4.   Preclusion of Other Employment by the Attorneys

As discussed above and provided in the attached declaration of Mr. Swidler, Class Counsel dedicated well over 1,200 attorney hours to this case over the last two years.  The bulk of that time was dedicated by Mr. Swidler, who was also required to travel cross-country on numerous occasions in his duties as Class Counsel.  As a result of the time spent on this matter, Mr. Swidler's ability to accept and work on other cases was impeded.

Thus, this factor also weighs in favor of the fee request.

### 5.   Customary Fee / Awards in Similar Cases

Class Counsel seeks to be paid 1/3 of the settlement fund as its contingent fee in this matter. In contingent class action cases, a 1/3 contingent fee is normal and routine. *See e.g. Lucken Family*

*Ltd. P'ship, LLP v. Ultra Resources, Inc.*, 2010 WL 5387559, *5-6 (D. Colo. Dec. 22, 2010) ("The customary fee award to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Horton v. Leading Edge Mktg. Inc.*, 2008 WL 323222, *3 (D. Colo. Feb. 4, 2008) (noting that "[m]ost fees" range "between 20% and 40% of the gross monetary settlement."); *see also In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d at 102 (granting award of 33 1/3% in common fund case and citing to ten cases holding the same).

In reviewing the customary fee, Courts also review "any prearranged contractual fee agreed to by the plaintiffs." *Anderson v. Merit Energy Co.*, 2009 U.S. Dist. LEXIS 100681, *10 (D. Colo. Oct. 20, 2009). Here, the Court-facilitated Notice which was provided to collective action members in 2013, and upon which members based their decision in whether to join this case, advised that "[i]f there is a recovery, Plaintiffs' attorneys will apply to receive 1/3 of the settlement obtained of money judgment entered in favor of all members of the class…" (September 5, 2013 Order, ECF Doc. No. 38 at p. 6). Thus, the fee request here is customary and was agreed to by each opt-in Plaintiff when he or she signed up for the case and accepted representation by undersigned counsel.

Thus, these two factors also weigh in favor of the fee request.

**6. Whether the Fee is Fixed or Contingent**

The risk of nonpayment to Plaintiffs and the Class was high in this case. As discussed above, this case poses a number of factual and legal issues, which created risks as to both liability and damages.

Despite these risks, Class Counsel took this case on a pure contingency, and would have received no compensation if they did not obtain a positive result for the Class. The class notice

provided to class members in 2013, after this matter was conditionally certified as a collective action, was very clear on this issue:

> Plaintiffs' attorneys have taken this case on a contingency fee. They may be entitled to receive attorneys' fees and costs from C.R. England should there be a recovery or judgment in favor of the Plaintiffs. If there is a recovery, Plaintiffs' attorneys will apply to receive 1/3 of any settlement obtained or money judgment entered in favor of all members of the class or their fees will be paid separately by C.R. England. **If there is no recovery or judgment in Plaintiffs' favor, Plaintiffs' attorneys will not seek any attorney's fees or costs from anyone.**

(September 5, 2013 Order, ECF Doc. No. 38 at p. 6) (emphasis added).

As of the date of filing, Class Counsel has expended more than 1,200 attorney hours on the instant matter, without having received any compensation for such work or promise of compensation for such work.  In addition, Class Counsel incurred more than $85,000 in litigation costs, none of which would have been reimbursed to Class Counsel in the case of a loss.  (Swidler Decl. at ¶3).

Thus, there was substantial risk of Class Counsel receiving no compensation for their time, as well as risk the expenses incurred for the benefit of class members (which exceed $85,000) would go unreimbursed.  Thus, the contingent nature of Class Counsel's representation also weighs in favor of awarding the requested fee.

### 7.  Amounts Involved and the Results Obtained

The total fund created equals five million dollars ($5,000,000), and will benefit approximately 10,000 opt-in plaintiffs who filed consent forms to join the instant action.  Class members will receive $150 plus a pro-rated amount based on the length of their employment with Defendants.

The recovery is an excellent result for class members, who faced considerable risks of non-payment or recovery of less than the current settlement provided.  While at first blush an FLSA settlement amounting to, on average, $500 per plaintiff may not seem extraordinary, it is important to note that the instant matter only sought minimum wages for drivers employed by Defendants. Unlike many FLSA matters, the employees here are exempt from the overtime requirements of the Act, and thus were only entitled (and only asserted) that they should have been paid the federal minimum wage of $7.25 per hour for each hour worked.  Additionally, under DOL regulations and case law, minimum wage violations incur on a workweek basis, meaning that amounts paid for working time, which exceed minimum wage, act as credits against any violation of minimum wage for unpaid hours.  *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960). As a result, the potential recovery in this matter was significantly more limited than in most FLSA matters (which assert overtime violations) where there are thousands of opt-in plaintiffs.

Moreover, as discussed above, Plaintiffs were unlikely to recover more than $5 million outside of a settlement unless the Court ordered that time spent by a truck driver in a sleeper berth was compensable work time.  It is unclear who would have prevailed on such claim in light of the facts of this case, and the immediate settlement provides a significant value on these claims.  The settlement provides for immediate payment (without any "claims made' or similar procedure designed to reduce the amount of individuals who will be paid) to all opt-in Plaintiffs.

The fact that not a single opt-in Plaintiff has objected to the settlement further evidences that opt-in Plaintiffs themselves are satisfied with the settlement and are content with the result ultimately achieved.  Defendants have and, if the settlement is denied final approval, will continue to vigorously defend this matter both legally and factually.  Given the substantial risk of

continued litigation, Plaintiffs' recovery of five million dollars ($5,000,000) for the Class supports reasonableness of the fee request.

Accordingly, Class Counsel the result obtained in this matter is very favorable to class members and weighs in favor of the fee request.

### 8.   Experience, Reputation, and Ability of Class Counsel

Class Counsel is experienced class and collective wage and hour litigators.  As discussed above, Class Counsel has been recognized by numerous federal courts as being experienced wage and hour class action attorneys.  *See, e.g. Keller,* 2014 U.S. Dist. LEXIS 155889, *14 (finding that Mr. Swartz and Swidler "have considerable experience handling class and collective action disputes" and noting that they "represented the Named Plaintiffs and the prospective class competently, diligently, and with professionalism throughout the course of this litigation"); *McGee,* 2014 U.S. Dist. LEXIS 75840 (finding Mr. Swartz and Mr. Swidler to be "well-versed in FLSA cases and skilled in litigating and settling wage-and-hour litigation"); *Stoneback,* 2013 U.S. Dist. LEXIS 86457 (finding that Mr. Swidler and Mr. Swartz have "handled numerous class action lawsuits" and that their firm "is qualified to represent the class as class counsel"); *Baouch v. Werner Enters.,* 2014 U.S. Dist. LEXIS 64981, *9 (D. Neb. May 12, 2014) (finding that Swartz Swidler, LLC, Justin Swidler, and Richard Swartz have "experience in class actions [and] knowledge of the law" in an FLSA and state law minimum wage case).  As stated above, Class Counsel currently represents more than 100,000 workers nationwide in various wage and hour litigation.

Additionally, Class Counsel has a reputation in the trucking industry for vigorously fighting for wages for over-the-road truck drivers.  Earlier this very month, an article was published by Transport Topics, the Newspaper of Trucking and Freight Transportation, which is published

by the American Trucking Association, discussing legal challenges facing the trucking industry with respect to pay practices and specifically, concerns relating to the failure to pay the federal minimum wage.  The article discusses six separate certified minimum wage lawsuits, and notes that Class Counsel is counsel to plaintiffs in each of the six cited cases.  *See* Gilroy, Roger, *Drivers, Fleets Embroiled in Lawsuits over Wages*, Transport Topics, September 7, 2015, *available online at* http://www.ttnews.com/articles/petemplate.aspx?storyid=39369.

Additionally, Class Counsel recently succeeded in obtaining a class-wide summary judgment victory for more than 50,000 truck drivers of Werner Enterprises, in a case that asserted that Werner had violated the minimum wage provisions of the FLSA and Nebraska state law during its training program.  While that case is now on petition to the Eighth Circuit for an interlocutory appeal, the decision further provides evidence that Class Counsel is an experienced law firm with a reputation in this industry to vigorously pursue such claims.  It is, in part, due to the Firm's reputation that such a successful result was obtained. *See Petrone*, 2015 U.S. Dist. LEXIS 101053, *motion to petition for interlocutory appeal granted*, 2015 U.S. Dist. LEXIS 112407.

Thus, this factor also weighs in favor of the fee request.

**9.  The "undesirability" of the case.**

A case is undesirable when it requires a significant time and financial investment coupled with risk of no payment.  *See In re Shell Oil Refinery*, 155 F.R.D. 552, 572 (E.D. La. 1993).  Here, Class Counsel spent north of 1,200 hours litigating this matter over two years.  Class Counsel has also spent more than $85,000 in out-of-pocket costs litigating this matter.  Due to the contingent nature of Class Counsel's representation, such cost and time would have been lost if there was no recovery for the class.

In addition, as discussed above, the case law remains unsettled as to who would have prevailed if the case continued through litigation. Additionally, Defendants intended to pursue a motion for decertification after the close of discovery, arguing that individualized circumstances and defenses preclude this Court from resolving this case on a collective basis. Should they have prevailed on such a motion, Class Counsel would have been unable to recover for the vast amount of time and expenses incurred in this matter, even if the Named Plaintiffs prevailed on their minimum wage claims.

Thus, this factor also weighs in favor of the fee request.

## 10. The Nature and Length of the Professional Relationship with Named opt-in Plaintiffs.

The instant matter was filed in April of 2013 and was certified as a collective action a few months later. Most opt-in plaintiffs joined this action in late 2013 or the first month or two of 2014. Thus, Class Counsel has represented the Named Plaintiffs and opt-in Plaintiffs for approximately two years.

Accordingly, Class Counsel has had a relatively lengthy professional relationship with the Named Plaintiffs and the opt-in Plaintiffs, and this factor accordingly also weighs in favor of the fee request.

## 11. There are no objections to Class Counsel's fee request (or any other part of the settlement).

A lack of objections from opt-in plaintiffs further supports a finding that the fee request is reasonable. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005); *Droegemueller v. Petroleum Dev. Corp.*, 2009 U.S. Dist. LEXIS 123875, *12 (D. Colo. Apr. 7, 2009) ("Significantly, the Court also notes that although the Class Settlement Notice mailed to the Class members specifically reflected that Class Counsel would be requesting an award of attorneys' fees equal to one-third of the Net Class Settlement Fund, *not a single one* of the 1,295 members of the

Settlement Class submitted any objection to Class Counsel's request for an award of attorneys' fees. The absence of any Class members' objection is an additional factor that supports this Court's approval of the requested attorneys' fees") (emphasis in original, internal citations ommitted); *Millsap v. McDonnell Douglas Corp.,* 2003 U.S. Dist. LEXIS 26223, *14 (N.D. Okla. 2003) (where only three class members, out of 1,074, objected to class counsel's requested attorneys' fees, the small number of objections supported the appropriateness of the attorneys' fee award); *Anderson v. Merit Energy Co*., 2009 U.S. Dist. LEXIS 100681, *13 (D. Colo. Oct. 20, 2009) (noting that fee was supported by the lack of objections by any of the 2,693 class members); *Barr v. Qwest Communs. Co., LLC,* 2013 U.S. Dist. LEXIS 4662, *17 (D. Colo. Jan. 11, 2013) (noting where only a single class member objected to the fee as excessive, the lack of a substantial number of objections supported the fee request).

As of the writing of the instant brief, there have been **no** objections filed by any opt-in Plaintiff as to any aspect of the Settlement, including the attorneys' fee request, which was fully disclosed both in the Court-ordered settlement notice *and* in the notice provided to opt-in Plaintiffs several years ago informing Plaintiffs of the case and providing the plaintiffs an opportunity to opt-in to the instant litigation.  (Exhibit 2, Cudworth Decl.).  Thus, when Plaintiffs opted into the case, they affirmatively agreed that Swartz Swidler, LLC would represent them, and the notice made clear that the representation provided would be on a contingent basis, that Class Counsel would apply for 1/3 of any recovery if successful, and that Class Counsel would receive nothing – including not seeking reimbursement for any out-of-pocket costs incurred – if unsuccessful.  And the opt-in Plaintiffs have again consented to the fee request when after notice of the pending settlement was served on all 10,000+ opt-in Plaintiffs, not a single person objected.

The lack of any objections further supports the reasonableness of the fee request.

**12. The lodestar cross-check also confirms the reasonableness of the fee request.**

While not required, Courts which award attorney's fees based upon the percentage of the fund may crosscheck the requested fee award by the lodestar amount. "[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1051 (9th Cir. 2002) (confirming fee request where percentage of the fund resulted in a lodestar multiplier of 3.65), *cert. denied*, 537 U.S. 1018, 123 S. Ct. 536, 154 L. Ed. 2d 425 (2002);

"In applying the crosscheck "multipliers from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Id.* (confirming fee request where percentage of the fund resulted in a lodestar multiplier of 3.65; *In re Core Bond Fund*, 2011 U.S. Dist. LEXIS 112949 (D. Colo. Sept. 30, 2011) (4.25 multiplier); *Mishkin v. Zynex, Inc*., 2012 U.S. Dist. LEXIS 132405, (D. Colo. Sep. 14, 2012) (collecting cases in the 10th Circuit approving multipliers ranging from 2.5 to 4.6); *In re Rite Aid*, 396 F.3d 294, 306 (3d. Cir. 2005) (*citing Task Force Report*, 108 F.R.D. at 243) (approving a lodestar multiplier of 4.07)..

In determining the lodestar for cross-check purposes, the Court need not engage in a "full-blown lodestar inquiry," *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 169 n.6 (3d Cir. 2006), or "mathematical precision," *In re Rite Aid Corp*., 396 F.3d at 306-07.  A court need not involve itself with "a review of actual [attorney] time sheets." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 592-93 (D. NJ. 2010).  Indeed, where there have been no objections to the requested fee, "a full-blown lodestar analysis is an unnecessary and inefficient use of judicial resources." *Id*.; *see also Kirsch v. Delta Dental,* 534 Fed. Appx. 113, 117 (3d Cir. 2013).  Additionally, while lodestar multipliers are a relevant consideration in determining if the fee request is reasonable, "the lodestar cross-check does not trump the primary reliance on the percentage of common fund method." *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 307 (3d Cir. 2005).

23

In the instant matter, Class Counsel has performed 1,245.8 hours litigating and prosecuting this matter. (Swidler Declaration at ¶3).[3]  The work was performed by attorneys Justin Swidler, Richard Swartz, Joshua Boyette, Daniel Horowitz, and Travis Martindale, although most of the time was spent by Mr. Swidler and Mr. Swartz. (*See* Attorney Time Records, Exhibit 1-A).

Richard Swartz was admitted to the bar in 1997.  (Swidler Decl. at ¶¶11-13). Justin Swidler was admitted to the bar in 2007.  (*Id.* at ¶¶8-10).  Both have litigated more than 60 putative wage and hour cases, and as discussed above and in their supporting affidavits, both are currently class counsel in 18 certified wage and hour cases, cumulatively representing more than 100,000 workers. (*Id.* at ¶¶23-24).  Numerous federal courts have held that a reasonable hourly billing rate for Mr. Swidler and Mr. Swartz when litigating class action wage and hour matters is $500 per hour.  *See McGee,* 2014 U.S. Dist. LEXIS 75840 (finding $500 per hour to be reasonable rate for Mr. Swidler and Mr. Swartz in a certified FLSA collective action); *See Keller*, 2014 U.S. Dist. LEXIS 155889, *42 (same).

The associates who worked on this matter have, on average, 4.5 years of experience practicing law.  (Swidler Decl. at ¶14-22)  Last year, a federal court found that a reasonable blended rate for the associates of Swartz Swidler was $350 per hour, when the associates had on average 1 year less of experience.  *Keller,* 2014 U.S Dist. LEXIS 155889, *42.  Nevertheless,

---

[3] Class Counsel does not require paralegals to track their time, and accordingly, while a significant amount of paralegal work was performed in this matter, Class Counsel does not seek directly seek fees for reimbursement of such time.  However, that Class Counsel has not sought compensation for such time further supports the reasonableness of the fee request.  This is especially true in light of the extraordinary amount of paralegal and administrative work necessary to process the more than 10,000 Consent Forms received.

Class Counsel here seeks this Court approve the same blended rate of $350 per hour in this matter when calculating the lodestar cross-check. [4]

As discussed below, utilizing such rates produces a lodestar multiplier of 2.9[5].   The multiplier is calculated as follows:

1.  Multiplying the number of hours performed by partners Justin Swidler and Richard Swartz (917.2) by $500/hour, totaling: $458,600;

2.  Multiplying the number of hours performed by associates Joshua Boyette, Daniel Horowitz, and Travis Martindale (328.1) by $350/hour, totaling: $114,882.50;

3.  Adding the above together results in a lodestar of: $573,482.50;

4.  Dividing the requested fee ($1,666,666) by the lodestar ($573,482.50) provides a multiplier of 2.9.

Thus, the lodestar cross-check further confirms the reasonableness of the fee request. Accordingly, Class Counsel respectfully requests this Court award the requested fee as it is reasonable upon consideration of the relevant *Johnson* factors, there have been no objections to the fee request, and the lodestar cross-check confirms the reasonableness of the request.

### C.     Class Counsel should be reimbursed for its out-of-pocket litigation costs.

"[A]n attorney who creates or preserves a common fund for the benefit of the class is entitled to receive reimbursement of all reasonable costs incurred." *Tuten v. United Airlines, Inc.,* 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014), quoting *Vaszlavik v. Storage Tech. Corp.*, 2000 U.S.

---

[4] "In utilizing the blended billing rates to calculate the lodestar, the courts allow the use of current billing rates at the time the calculation is made rather than the billing rates actually in effect at the time the hours were recorded. Although counterintuitive, this is intended to compensate for delay in receiving fees*." In re Schering-Plough Corp.*, 2013 U.S. Dist. LEXIS 147981 (D.N.J. Aug. 27, 2013).

[5] This calculation includes an estimated 75 hours of work which will be performed following the instant filing, including travel to/from and preparations for the Final Approval Hearing, finalizing and confirming settlement allocation calculations, and responding to inquiries from opt-in Plaintiffs.

Dist. LEXIS 21140, at *4 (D. Colo. Mar. 9, 2000).  Additionally, the class notice informed opt-in

Plaintiffs that Class Counsel would seek recovery of its out-of-pocket litigation costs, not to exceed

$100,000.

Here, Class Counsel has incurred significant out-of-pocket costs, including, expert fees,

mailing and postage expenses (for facilitating the conditional certification notice), mediation fees,

deposition transcript fees, expenses associated with Adobe Echosign (which was utilized to permit

online Consent Forms), travel costs, filing fees, and local counsel fees, totaling $87,567.81

(Swidler Declaration at ¶4).  No class member objected to Class Counsel recouping its costs from

the settlement fund.  Accordingly, Class Counsel respectfully requests to be reimbursed for such

costs.

> **D.** **The Claims Administrator should be provided its reasonable fee for facilitating notice of the preliminarily approved settlement, calculating allocations of the settlement, and distributing payments to opt-in plaintiffs.**

The Settlement Agreement provides that the costs of administering the settlement shall be

paid from the Settlement Fund.  (*See* Settlement Agreement, ECF Doc. No. 128-1 at pp. 3, 5).

Where a settlement agreement calls for the costs of administration to be borne by the settlement

fund, the Court should approve same.  *See, e.g., In re High-Tech Emple. Antitrust Litig*., 2013 U.S.

Dist. LEXIS 180530, *19 (N.D. Cal. Oct. 30, 2013) ("[a]ll costs incurred in disseminating Notice

and administering the Settlement shall   be   paid   from   the Settlement   Fund   pursuant   to

the Settlement Agreement").

The Claims Administrator in this matter properly provided notice to opt-in Plaintiffs of the

pending settlement, which included mailing the notice to more than 10,000 opt-in plaintiffs,

updating address information for more than 2,000 opt-in plaintiffs, skip tracing several hundred

opt-in plaintiffs.  The Claims Administrator will further finalize calculations of the settlement

awards to be distributed to each opt-in Plaintiff (per the allocation formula in the settlement agreement), and if the Court grants final approval, hold the fund in trust and issue checks and Forms W-2 and 1099 to all opt-in Plaintiffs in accordance with the Court's order and the settlement agreement.  (*See* KCC Administration Service Estimate, attached as Exhibit 1-B to Swidler Decl.).

KCC has estimated that the total costs and fees associated with its work will be $59,700, although the exact amount will not be known until after the Final Approval Hearing.  (*Id.*).  The fee is especially reasonable considering that state employment taxes must be determined based on the 46 states in which the opt-in plaintiffs resided.  (*Id.*).

Thus, Plaintiffs respectfully request that this Court order that Claims Administrator shall be paid its reasonable fees and costs incurred out of the Settlement Fund.

### E.    This Court should award Named Plaintiffs the requested service payments.

The seven representative plaintiffs seek service awards of $7,500 each.  The Court-ordered settlement notice properly disclosed to all class members that they were seeking such award, and not a single class member objected to the request.

"The purpose of [service] payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws."  *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663, 63-64 (D. NJ. Apr. 8, 2011).  By bringing suit against a large company and having documents publicly filed with their names on them, named plaintiffs who assist in class action litigation "[take] on certain risks.  By bringing suit against a major company[,]… they risk their good will and job security in the industry for the benefit of the class as a whole."  *Id.*; *see also UFCW Local 880-Retail Food v. Newmont Mining Corp.*, 352 Fed. Appx. 232, 235 (10th Cir. 2009) ("a class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class"); *Whittington*

*v. Taco Bell of Am., Inc.*, 2013 U.S. Dist. LEXIS 161665, *24 (D. Colo. Nov. 13, 2013) (approving service payment for the named plaintiff of $7,500); *In re Bank of Am. Wage & Hour Empl. Litig.*, 2013 U.S. Dist. LEXIS 180056, *26 (D. Kan. Dec. 18, 2013) (approving service payments which in the aggregate would not exceed $200,000).

Here, the seven representative plaintiffs greatly assisted in the litigation and the resolution of this matter. Prior to conditional certification, these seven individuals[6] could have attempted to settle the case on behalf of only themselves. Had they attempted to do so, they likely could have obtained a better financial result for themselves by leveraging the potential collective nature of the litigation to their advantage. Clearly, had they done so, the more than 10,000 opt-in Plaintiffs who will be paid in this lawsuit would not have received anything.

In addition, the representative Plaintiffs regularly conferenced with Class Counsel to discuss the case, including spending a significant amount of time discussing their experiences while employed by Defendants with Class Counsel, assistance in providing information in the Complaint and in the Conditional Certification motion, assistance in settlement discussions, and assistance in developing a better understanding of Defendants' factual defenses. The representative Plaintiffs further were provided and reviewed many of the documents produced. The efforts and risks made by the representative Plaintiffs were not shared by any opt-in Plaintiffs in this case. (Swidler Decl. at ¶7).

The service payments here are well within the amounts regularly provided in similar cases. *See, e.g. Whittington*, 2013 U.S. Dist. LEXIS 161665, *24 (approving service payment for the named plaintiff of $7,500); *Bredbenner*, 2011 U.S. Dist. LEXIS 38663 at *68 ($10,000 each for 8

---

[6] Mr. Christopher Kelly was also a named plaintiff; however, Class Counsel has been unable to contact him for more than one year, and consequently, he is no longer functioning as a representative plaintiff and no service payment is requested on his behalf.

named plaintiffs); *Dewey*, 728 F. Supp.2d at 610 ($10,000); *see also Newberg on Class Actions* § 11.38, at 11-80 (citing empirical study from 2006 that found average award per class representative to be $16,000).

For these reasons, the class has greatly benefited from the efforts of the Named Plaintiffs and it is accordingly requested that the service payments be awarded.

## III.    CONCLUSION

For the reasons as stated above, Plaintiffs request that the Court give final approval to the settlement, and award the attorney's fees, expense reimbursement, and service payment as requested.

Respectfully Submitted,

*/s/ Justin L. Swidler*
Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Hwy N. Ste. 402
Cherry Hill, NJ 08003
Phone: (856) 685-7420
Fax: (856) 685-7417