IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KOFI CAMPBELL, et al.<br><br>                    Plaintiffs,<br>        v.<br><br>C.R. ENGLAND, INC. d/b/a ENGLAND<br>CARRIER SERVICES, et al.<br><br>                Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:13-cv-00262<br><br>Judge Clark Waddoups |

This case comes before the court on Plaintiffs' unopposed motion for approval of a collective action settlement and for related relief. (Dkt. No. 139). For the reasons stated below, the court GRANTS the motion.

## I.        BACKGROUND

This is a certified collective action filed pursuant to the Fair Labor Standards Act (FLSA), in which Plaintiffs seek to recover minimum wage payments owed to a class of over-the-road truck drivers who worked for Defendant C.R. England, Inc. as company drivers. Plaintiffs filed this action in April of 2013, and promptly sought conditional certification a few months later. The court granted the motion in September 2013 and ordered that notice of the collective action be sent to all individuals who had been employed by C.R. England as over-the-road drivers in the three years preceding the filing of the motion. The opt-in period was extended after Plaintiffs filed a motion requesting to send a reminder postcard and to extend the opt-in period end date. Ultimately, over 10,000 individuals filed consent forms to join the case (Opt-in Plaintiffs).

Earlier this year, Plaintiffs amended their lawsuit to seek damages for a subset of drivers under California law, and then filed for Rule 23 class certification on such claims. In response, C.R. England filed a motion to dismiss the California claims with prejudice, arguing that Plaintiffs should not be permitted to proceed in light of the proceedings and pending settlement in a case before the United States District Court for the Central District of California, *Jasper v. C.R. England,* 2:08-cv-05266-GW-CW (C.D. Cal.), in which 2,000 Opt-in Plaintiffs in this case are certified class members.[1] This court granted C.R. England's motion and denied the Rule 23 class certification motion as moot. Thus, the only certified claims are the FLSA claims, and, accordingly, the only claims permitted to be litigated on a class-wide basis. The settlement class in this matter is therefore limited to the approximately 10,000 Opt-in Plaintiffs who filed consent forms to join the FLSA collective action.

Following significant discovery, motion practice, and litigation efforts, the parties attended a private mediation before Kathryn Miller in March 2015. The mediation lasted about ten hours, and did not result in a settlement. However, the parties continued their discussions with the mediator's assistance, and ultimately reached a settlement approximately one week later.

The proposed Settlement Agreement creates a five million dollar ($5,000,000) Settlement Fund. Opt-in Plaintiffs will receive $150 plus an additional amount pro-rated based on the length of their employment. In addition, the proposed Settlement Agreement provides for attorneys fees of approximately 33.3% of the Settlement Fund, as well as costs not to exceed $100,000. It also provides for payment from the Settlement Fund to the Claims Administrator, and for incentive awards in the amounts of $7,500 to be paid from the Settlement Fund to each of the Named

---

[1] Ultimately, the parties in the *Jasper* case reached a settlement. An appeal of the approval of that settlement agreement is currently pending before the Ninth Circuit.

Plaintiffs.[2] In addition, the Settlement Agreement specifically contemplates that Opt-in Plaintiffs who are also class members in the *Jasper* case will collect payment under the terms of both the instant Settlement Agreement as well as the settlement negotiated in the *Jasper* case. In recognition that the *Jasper* settlement contains a release of claims provision, the Settlement Agreement provides that *Jasper* class members will receive the full benefit of the *Jasper* settlement as well as compensation in the amount of one-third of the amount they would expect to receive in this case. In exchange for receiving compensation under both settlements, the *Jasper* class members agree to dismiss the pending appeal with prejudice. Finally, the Settlement Agreement provides that all Named and Opt-in Plaintiffs waive all claims that were litigated or that could have been litigated in this matter, including FLSA minimum wage claims and analogous state law claims. (Dkt. No. 128-1).

In light of the proposed settlement, the court determined that the appropriate course of action was to engage in a two-step settlement approval process to protect the rights of the Opt-in Plaintiffs, who otherwise may not be provided an opportunity to be heard, and provide the court additional assurances that the settlement is fair and reasonable. Accordingly, the court engaged in a preliminary review of the Settlement Agreement and approved it pending a final fairness hearing. *See, e.g.*, *Forauer v. Vt. Country Store, Inc.*, No. 5:12-CV-276, 2015 WL 225224, at *1 (D. Vt. Jan. 16, 2015) (approving settlement after notice to opt in plaintiffs and final fairness hearing); *Hosier v. Mattress Firm, Inc.*, No. 3:10-CV-294-J-32JRK, 2012 WL 2813960, at *2 (M.D. Fla. June 8, 2012), *report and recommendation adopted*, No. 3:10-CV-294-J-32JRK, 2012 WL 2838610 (M.D. Fla. July 10, 2012) (same). The court also ordered that notice of the settlement be sent to all Plaintiffs. The notice explained the terms of the Settlement Agreement,

---

[2] The Named Plaintiffs are Kofi Campbell, Billy Brooks, Howard Brooks, Charlie Smiley III, Eric Diggins, Michael Atkins, and Caleb Johnson.

3

including the release of claims provision. The notice provided Plaintiffs forty-five days to mail any objections, and informed them they could attend the final fairness hearing, which was scheduled for September 18, 2015.

On September 18, 2015, the court held the final fairness hearing regarding the settlement and related relief. Attorney Justin Swidler, of Swartz Swidler, LLC, appeared for Plaintiffs. Attorney Scott Hagen, of Ray Quinney & Nebeker P.C., appeared for C.R. England. No Opt-in Plaintiffs appeared at the hearing or filed any objections to the settlement or requested relief.

## II.      ANALYSIS

The parties have asked the court to approve the Settlement Agreement, award Plaintiffs' counsel attorneys fees and costs from the Settlement Fund, to permit payment from the fund to the Claims Administrator, and to pay from the fund an incentive award of $7,500 to each Named Plaintiff. The court addresses each request in turn.

### A.  Approval of the Settlement Agreement

Collective action settlements under the FLSA must be approved by the district court. *See, e.g.*, *Robles v. Brake Masters Sys., Inc.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, at *18 (D. N.M. Jan. 31, 2011) (citing *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). In determining whether approval is appropriate, courts consider whether the settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* (quoting *Lynn's Food Stores*, 679 F.2d at 1355).

#### 1. There exists a bona fide dispute.

To approve a settlement under the FLSA, a court must first determine that a bona fide dispute exists under the FLSA. *Lynn's Food Stores,* 679 F.2d at 1354. The FLSA requires all employers covered by the Act to pay employees, with certain exceptions, a minimum wage for

4

each hour worked. 29 U.S.C. § 206. "'Work' is not defined in the FLSA, but an employee generally must be paid for his time that is controlled and required by the employer regardless of whether it involves any mental or physical exertion." *Fowler v. Incor,* 279 F. App'x 590, 597 (10th Cir. 2008). During the period for which Plaintiffs seek compensation, that minimum wage has been set at $7.25 per hour. In this case, after an initial training period, C.R. England pays its drivers on a mileage rate where drivers receive a set pay for each mile driven, as well as compensation for various other tasks. When calculating damages for minimum wages under the FLSA, most courts follow the so-called *Klinghoffer* rule, meaning that an employer does not violate the federal minimum wage unless, when wages are averaged over an entire workweek, the average wage is less than the federal minimum. *See, e.g.*, *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 494 (2d Cir. 1960); *Taylor v. McLane Foodservice, Inc.*, No. 12-2697-JWL, 2013 WL 943531, at *3 (D. Kan. Mar. 11, 2013) (collecting cases applying the *Klinghoffer* rule). *But see Norceide v. Cambridge Health All.*, 814 F. Supp. 2d 17 (D. Mass. 2011) (declining to apply *Klinghoffer* to minimum wage claims and finding that minimum wage should be computed on an hourly basis).

In the instant case, Plaintiffs contend they are owed compensation for various activities, which they contend constitute "work" under the FLSA, but for which they were not paid under C.R. England's compensation structure. C.R. England disputes that the activities Plaintiffs contend are compensable (with the exception of Department of Transportation "on duty" time) constitute work, and further asserts that the wages it paid Plaintiffs fully complied with the minimum wage requirements of the FLSA.[3]

---

[3] There is no dispute that Plaintiffs are exempt from the overtime provisions of the FLSA pursuant to the Motor Carrier Act. However, the Motor Carrier Act does not exempt Plaintiffs from the minimum wage protections of the FLSA, and it is the minimum wage provisions that Plaintiffs contend C.R. England violated.

For example, Plaintiffs contend they should be paid for participating in a multiday classroom orientation prior to the start of their over-the-road training period. Specifically, Plaintiffs claim they spent about twenty-five hours in the classroom and received no compensation for the orientation. According to Plaintiffs, C.R. England should have paid them minimum wage for the time they spent in orientation. If all the time in orientation were held compensable work time, Plaintiffs contend that they would be owed collectively $1.7 million. In contrast, C.R. England contends that the orientation occurred prior to hiring Plaintiffs, and thus no compensation was necessary for such time.

Likewise, Plaintiffs argue they should have been paid for short rest breaks (of twenty minutes and less in duration) and for sleeping periods in excess of 8-hours per day that occurred while they were over-the-road. In support of this position, Plaintiffs cite to Department of Labor regulations and two recent out-of-circuit federal district court decisions. *See* 29 C.F.R. §§ 785.18, 785.22; *Petrone v. Werner Enters., Inc.*, No. 8:11CV401, 2015 WL 4629177 (D. Neb. Aug. 3, 2015), *motion to certify appeal granted*, No. 8:11CV401, 2015 WL 5156869 (D. Neb. Aug. 25, 2015) (opinion granting summary judgment for plaintiffs as to liability); *Punter v. Jasmin Int'l Corp.*, No. CIV.A. 12-7828 SRC, 2014 WL 4854446, at *6 (D.N.J. Sept. 30, 2014) (opinion granting default judgment to plaintiffs as to liability and damages on FLSA claim). Plaintiffs contend that if they won on these claims, Plaintiffs would be owed about $10 million in lost wages.

But C.R. England contends such time is not compensable and that the Department of Transportation's regulations determine which time constitutes work for over-the-road truck drivers. C.R. England points out that the District Court in *Petrone* granted a motion for interlocutory review of its summary judgment decision, and that *Punter* was a default judgment

case. It further argues that *Nance v. May Trucking Co.*, No. 3:12-CV-01655-HZ, 2014 WL

199136 (D. Or. Jan. 15, 2014), *appeal pending*, 14-35640 (9th Cir. July 30, 2014), which held

that sleeper berth time where individuals were on duty for less than 24 hours was not

compensable work time, supports its position that such time is not compensable under the FLSA.

Further, C.R. England contends that even if the sleeper berth time at issue in the action were

compensable, Plaintiffs' calculation of total damages is overstated. C.R. England therefore

disputes it would owe Plaintiffs $10 million.

      Finally, Plaintiffs contend that whether they were paid a mileage rate or salary,

C.R. England's pay practices regularly failed to pay minimum wage, when averaged out over an

entire workweek. *See Klinghoffer*, 285 F.2d at 494. To prove the amount of time they worked,

Plaintiffs have relied on their driver logs, which were maintained consistent with Department of

Transportation regulations. Consistent with these regulations, Plaintiffs recorded their time in

one of four statuses, "off duty," "sleeper berth," "driving," and "on-duty not driving." Plaintiffs

contend that that all "driving" and "on-duty not driving" time constitutes work, and further

contend that "off duty" and "sleeper berth" time constitutes work in certain conditions. Both

parties hired experts to calculate alleged minimum wages due. According to Plaintiffs,

C.R. England failed to pay $1.4 million in minimum wages to the class for "driving" and "on-

duty not driving" time during the relevant period. C.R. England disputes the same, and contends

Plaintiffs have over-calculated this amount because Plaintiffs did not properly credit

C.R. England with all payments made for such time. Additionally, C.R. England notes that it

voluntarily paid about $500,000 to some, but not all, class members during the litigation to make

up for any potential shortfall in minimum wage due based on "driving" and "on-duty not

driving" time. While Plaintiffs do not agree that such amount was sufficient to make up for the

claimed shortfall, Plaintiffs do not dispute that it is proper to credit such amount to any damages owed, and this Court agrees. Thus, under this claim, it appears the maximum potential exposure is about $900,000.

As illustrated by the discussion above, bona fide disputes exist as to the Plaintiffs' claims and potential damages in this case. With respect to the compensability of classroom orientation, it is debatable whether this time should be considered "work" under the FLSA. *Compare Fowler*, 279 F. App'x. at 599 (holding that training required by the employer is work and must be paid), *with Donovan v. Am. Airlines, Inc.*, 686 F.2d 267, 271–72 (5th Cir. 1982) (holding that trainees were not employees when they participated in a multi-week training program which was similar to programs run at vocational schools and where trainees were not guaranteed a job). Likewise, with respect to compensation for breaks and sleeping periods, the court notes the lack of clear precedent as to who would prevail in this matter if it continued through litigation. For instance, there appears to be no consensus in the district courts and parties have not presented—nor is the court aware of—any decision from any federal appellate court with respect to the compensability of sleeper berth time. For all these reasons, the court is satisfied that the issues in this case present a bona fide dispute regarding whether C.R. England's practices violated the FLSA, and if so, the extent of damages Plaintiffs could have received if they prevailed.

### 2. The Settlement Agreement is fair and reasonable.

The court also finds that the Settlement Agreement is fair and reasonable. In assessing whether a proposed settlement is fair and reasonable, the court must consider four non-exhaustive factors: "(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable." *Tennille v. W. Union Co.*, 785

F.3d 422, 434 (10th Cir. 2015) (alterations in original). Consideration of these four factors demonstrates that the Settlement Agreement is fair and reasonable.

To begin, the Settlement Agreement was fairly and honestly negotiated. It was entered into "after an investigation of the claims and defenses," *see Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014), and after the parties engaged in "extensive discovery and damages calculations," *see Forauer v. Vt. Country Store, Inc.*, No. 5:12-CV-276, 2015 WL 225224, at *6 (D. Vt. Jan. 16, 2015) (approving settlement that was negotiated at arm's length after extensive discovery and damages calculations). Moreover, the Settlement Agreement is "the product of negotiation between represented parties" during private mediation, which supports a finding that it "did not come about because of 'overreaching' by the employer." *Lliguichuzhca v. Cinema 60*, 948 F. Supp. 2d 362, 365–66 (S.D.N.Y. June 5, 2013) ("Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable."); *accord Hernandez v. Tabak*, No. 12 Civ. 1402(PKC), 2013 WL 1562803, at *1 (S.D.N.Y. Apr. 10, 2013) (concluding settlement "negotiated at arm's length [was] not the product of coercion"). And there is no evidence to suggest that the settlement here is the product of collusion. Rather, the evidence shows that both parties zealously litigated this case for nearly two years, and the settlement is a result of a fair and difficult negotiation.

Likewise, as explained, numerous unresolved legal and factual disputes create a substantial risk to both sides if this litigation continued through trial or dispositive motion practice. It is highly likely a lengthy appeals process would follow any disposition by way of trial or dispositive motion practice, a likelihood that makes a settlement, which provides that Plaintiffs will be paid swiftly, even more fair. The substantial risks to both parties in continuing

to litigate the case additionally make resolution through settlement more valuable than the mere possibility of a more favorable outcome after further litigation.

Finally, the parties believe the Settlement Agreement is fair and reasonable. Competent and informed legal counsel for the parties, who are well versed on the facts and law of this matter, believe the settlement to be fair and reasonable. Importantly, not a single Opt-in Plaintiff, of more than 10,000, has objected to any part of the Settlement Agreement. Such a positive response further supports the finding that the settlement proposed is fair and reasonable. Accordingly, the court finds that this is a fair and reasonable settlement of a bona fide dispute under the FLSA.

### B.  Attorneys Fees and Costs

Plaintiffs have also asked the court to authorize the payment from the Settlement Fund of attorneys fees in the amount of $1,666,666 (33.3% of the Settlement Fund), as well as costs incurred in litigation in the amount of $87,567.81. This request is well taken.

In suits where a fund is recovered and fees are awarded therefrom by the court, the United States Supreme Court has indicated that the correct approach is to compute fees as a percentage of the common fund recovered. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478–79 (1980) (approving fees paid out of a common fund for the benefit of the class); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The Tenth Circuit also recognizes the propriety of the percentage-of-the fund method when awarding fees. *See Gottlieb v. Barry*, 43 F.3d 474, 484 (10th Cir. 1994); *see also Peterson v. Mortg. Sources, Corp.*, No. CIV.A. 08-2660-KHV, 2011 WL 3793963, at *12 (D. Kan. Aug. 25, 2011) ("This Court has also typically applied the percentage of the fund method when awarding fees in common fund, FLSA collective

actions."). Ultimately, "the percentage reflected in a common fund award must be reasonable." *Brown v. Phillips Petrol. Co.*, 838 F.2d 451, 454 (10th Cir. 1988).

In assessing reasonableness, the Tenth Circuit has instructed courts to consider the following factors: (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Gottlieb*, 43 F.3d at 483 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)); *see also Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993) (recognizing the court need not consider every single *Johnson* factor). The court can also look to the number of objectors to the settlement and attorneys fee request in assessing reasonableness. *See, e.g.*, *Droegemueller v. Petrol. Dev. Corp.*, No. CIV.A.07-CV-2508, 2009 WL 961539, at *4 (D. Colo. Apr. 7, 2009).

Considering the attorneys fees request in this case in light of these factors, the court finds the requested fee is reasonable. Plaintiffs' counsel litigated this matter for more than two years with competence, diligence, and professionalism. The court has reviewed the time reports submitted by Plaintiffs' counsel, which reflect that counsel has spent over 1,200 hours litigating the case. The court is satisfied that this time spent was reasonable and necessary to represent Plaintiffs in this matter. For example, Plaintiffs' counsel filed numerous motions and engaged in significant adversarial discovery prior to the settlement. The court also notes the significant risk to Plaintiffs' counsel in taking this case. Plaintiffs' counsel took this matter on a pure

contingency basis and therefore took substantial risk in receiving no payment for their time in light of the many unresolved legal issues at issue in the case. Moreover, Plaintiffs' counsel's involvement in this case impaired its ability to accept work on other cases.

The court further notes that Plaintiffs' counsel has significant experience in litigating wage and hour cases. Justin Swidler and Richard Swartz report to have litigated more than sixty putative collective action FLSA matters in the last five years, including a significant number of cases against trucking companies. Plaintiffs' counsel currently represents more than 100,000 workers in certified wage and hour cases. Plaintiffs' counsel has been approved by other courts as class counsel in wage and hour collective actions. Additionally, the court notes that Plaintiffs' counsel has a reputation in the trucking industry as being one of the prominent firms to engage in FLSA litigation on behalf of truck drivers.[4] And ultimately, Plaintiffs' counsel was successful in obtaining a substantial settlement on behalf of Plaintiffs.

Moreover, the court finds the 33.3% fee represents a customary contingency fee and is consistent with awards provided in similar cases. *See e.g.*, *Uselton*, 9 F.3d at 854 (approving fee award of 29% percent of the common fund); *Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc.*, No. 2:02 CV 950, 2014 WL 3943994, at *2 (D. Utah June 19, 2014) (approving a fee award that represented 33.3% of a settlement fund); *Lucken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*, 2010 WL 5387559, *5–6 (D. Colo. Dec. 22, 2010) ("The customary fee award to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 101 (D.N.J. 2001) (collecting cases approving fee requests of between 27.5% and 33.8% of the

---

[4] Plaintiffs' counsel was the subject of a recent article published in Transport Topics, which discussed six separate FLSA minimum wage lawsuits filed by Plaintiffs' counsel, all of which have been certified as collective actions. *See* Gilroy, Roger, *Drivers, Fleets Embroiled in Lawsuits over Wages*, Transport Topics (Sept. 7, 2015), http://www.ttnews.com/articles/petemplate.aspx?storyid=39369.

common fund, and ranging from $1.46 to $37.1 million). Finally, the court notes that the Opt-in

Plaintiffs agreed to this amount when they opted into the litigation in 2013 and there have been

no objections to the attorneys fee request. Thus, all these factors support awarding Plaintiffs'

counsel $1,666,666 in attorneys fees, approximately 33.3% of the Settlement Fund.[5]

      Likewise, the court finds that Plaintiffs' counsel is entitled to be reimbursed for out-of-

pocket litigation costs in the amount of $87,567.81. *See Tuten v. United Airlines, Inc.,*

41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("[A]n attorney who creates or preserves a common

fund for the benefit of the class is entitled to receive reimbursement of all reasonable costs

incurred." (internal quotation marks omitted)). The court has reviewed the declaration Plaintiffs'

counsel submitted in support of this request and has determined the costs incurred in litigating

this matter were reasonable and benefitted Plaintiffs. Furthermore, the court finds it relevant that

the class notice informed Opt-in Plaintiffs that Plaintiffs' counsel would seek recovery of its out-

of-pocket litigation costs, not to exceed $100,000, and there were no objections to this amount.

Finally, the court notes that when combined together, the total attorneys fees and costs requested

represent approximately 35% of the Settlement Fund as a whole. This aggregated amount is

within a reasonable range. *See, e.g.*, *Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-

KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (approving a request for fees

and costs in an FLSA class action settlement where combined the fees and costs amounted to

---

[5] Although the common fund approach is the preferred method for assessing the reasonableness of fees in this context, *see Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995) (stating that there is a "preference for the percentage of the fund method" over a lodestar calculation), the court notes that the fee award is also reasonable under the lodestar crosscheck. *See Vizcanio v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (recognizing that the lodestar crosscheck may provide a useful perspective on the reasonableness of a given percentage award, and approving an award that resulted in a lodestar multiplier of 3.65). Applying the lodestar crosscheck calculation here results in multiplier of 2.9, which is within a reasonable range. *See, e.g.*, *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting cases from district courts in the Tenth Circuit approving multipliers ranging from 2.5 to 4.6).

approximately 39% of the settlement fund). For these reasons, the court grants Plaintiffs' request for attorneys fees and reimbursement for costs incurred in litigation.

### C. Payments to the Claims Administrator and Named Plaintiffs

Finally, Plaintiffs ask the court to approve payments out of the Settlement Fund to the Claims Administrator in the amount of approximately $60,000, and to the seven Named Plaintiffs in the amount of $7,500 each. The court finds both requests to be reasonable.

The Settlement Agreement provides that the costs of administering the settlement will be paid from the Settlement Fund. Where a settlement agreement calls for the costs of administration to be borne by the settlement fund, the court should approve same. *See, e.g.*, *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 6328811, at *5 (N.D. Cal. Oct. 30, 2013) (permitting all costs incurred in disseminating notice and administering the settlement to shall be paid from the settlement fund, pursuant to the terms of a settlement agreement"). Here, Plaintiffs' counsel informs the court the Claims Administrator's costs are estimated to be about $60,000, which the court finds to be reasonable in light of the number of plaintiffs involved and the amount of money to be distributed. *See, e.g.*, *Whittington*, 2013 WL 6022972, at *6 (approving administrative fees in the amount of $85,000.00).

In addition, the Named Plaintiffs are entitled to an incentive award. "A class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class." *UFCW Local 880–Retail Food Emp'rs Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x. 232, 235–36 (10th Cir. 2009). In this case, the Named Plaintiffs regularly conferred with Plaintiffs' counsel to discuss the case and spent a significant amount of time discussing their experiences and providing necessary information. Further, the Named Plaintiffs provided and reviewed many of the documents

14

produced. Plaintiffs' counsel also represents that the Named Plaintiffs took considerable risk in bringing the litigation. In these circumstances, the court is persuaded that an award of $7,500 to the seven Named Plaintiffs, which represents $52,000 in the aggregate, is fair and reasonable. *See, e.g.*, *Owner-Operator Indep. Drivers*, 2014 WL 3943994, at *2 (approving incentive award in the amount of $15,000 to each named plaintiff).

### III.    CONCLUSION

Based on the above, the court orders as follows:

1. The FLSA Collective Action Settlement, filed with this Court at ECF Doc. No. 128-1, is granted FINAL APPROVAL. All Named and all Opt-In Plaintiffs are subject to the release of claims therein;

2. Defendants, pursuant to the Settlement Agreement, are ordered to wire the entire Settlement Fund of $5,000,000 (Five Million Dollars) to the Claims Administrator no later than forty-five days from the final fairness hearing;

3. The Claims Administrator shall distribute the Settlement Fund to all Named Plaintiffs, and Opt-in Plaintiffs, consistent with the terms of the Settlement Agreement;

4. Class Counsel are awarded reasonable attorney's fees in the amount of $1,666,666, totaling approximately 33.3% of the Settlement Fund, and are granted reimbursement of their out-of-pocket litigation costs totaling $87,567.81;

5. The Claims Administrator shall be entitled to its reasonable fees and costs incurred in administering the settlement, which shall be paid from the Settlement Fund; and

6. This matter is dismissed with prejudice without costs or fees to either side, except as provided in the Settlement Agreement and this Order.

SO ORDERED this 30th day of September, 2015.

BY THE COURT:

Clark Waddoups
United States District Court Judge